BOARD OF FIREMEN'S RELIEF & RETIREMENT
FUND TRUSTEES OF HOUSTON, TEXAS, V. JULIUS *T*. MARKS.

No. A-3147. Decided July 18, 1951.
Rehearing overruled October 3, 1951.
(242 S. W., 2d Series, 181.)

434

*Will Sears,* City Attorney, *Richard R. Burks,* Assistant City Attorney, both of Houston, and *Gaynor Kendall,* of Austin, for petitioner, Julius F. Marks.

The judgment of both the lower courts should be reversed and judgment rendered in the Supreme Court that Marks take nothing by his suit because the finding of the Firemen's Pension Commissioner that claimant had not become disabled while in the performance of his duty as a fireman for the City of Houston, or in consequences of such duty, was supported by substantial evidence, and his order denying the pension under such finding is authorized by Article 6243e, sec. 7, Vernon's Civil Statute. United Service Automobile Ass'n. v. Miles, 139

Texas 138, 161 S.W. 2d 1048; Board of Trustees of Firemen's Relief and Pension Fund for City of Tulsa v. Miller, 186 Okla. 586, 99 Pac. 2d 146; Hood v. Texas Indemn. Ins. Co., 146 Texas 522, 209 S.W. 2d 345.

*Sneed & Vine* and *Lawrence P. Gwin,* all of Austin, for respondent.

In response to petitioner's proposition, cite: In re Benson, 178 Okla., 299, 62 Pac. 2nd 962; Guzman v. Maryland Casualty Co., 130 Texas 62, 107 S.W. 2d 356; Texas Indm. Ins. Co. v. Godsey, 143 S.W. 2d 639.

MR. JUSTICE CALVERT delivered the opinion of the Court.

In the latter part of October, 1944, respondent, Julius F. Marks, left his employment as a pipeman with the fire department of the City of Houston where he had been regularly employed since June 1, 1939. On December 28, 1944, respondent applied to petitioner Board, charged with the administration of the Firemen's Relief and Retirement Fund created under the provisions of Article 6243e, V.A.C.S. (Acts 1937, 45th Leg., p. 229, ch. 125), for a total disability pension. Respondent's application was denied on the ground that respondent "had not become physically or mentally disabled while in and/or in consequence of the performance of his duty as a fireman." Respondent appealed to the Firemen's Pension Commissioner in Austin and again his application was denied, the Commissioner stating: "I am unable to find any evidence where his (respondent's) trouble was brought on while performing the duties as a fireman for the City of Houston, or in the consequence of the performance of his duty as a fireman." Respondent thereupon filed this suit in the District Court of Travis County, alleging that while in the course of performing his duties as a fireman he had suffered several severe injuries to the joints and bones of his body and on several occasions had been exposed to freezing or near-freezing temperatures while his clothing was soaked with water, which injuries, or exposure, or a combination thereof, had caused him to develop hypertrophic arthritis · rendering him totally and permanently disabled. He sought by his suit to set aside the findings and orders of the petitioner Board and the Firemen's Pension Commissioner on the ground that such findings and orders were not reasonably supported by substantial evidence, and to recover accrued and future installments of a total disability pension. The judgment of the trial court granted the relief prayed for and that judgment was affirmed by the Court of Civil Appeals. 237 S.W. 2d 420.

Respondent's claim and right to a disability pension arises under Sec. 7 of Art. 6243e which reads in part as follows: "Wherever a person serving as an active fireman duly enrolled in any regularly active fire department in any city or town in the state, now within or that may hereafter come within the provisions of this Act, shall become mentally or physically disabled *while in and/or in consequence of, the performance of his duty*, said Board of Trustees may, upon his request, or without such request if it shall deem proper and for the good of the department, retire such person from active service either upon total or partial disability as the case may warrant * * *." (Emphasis ours). Section 18 of the Act provides for an appeal from the decision or order of the Board of Trustees to the Firemen's Pension Commissioner and for an appeal from any final decision or order of the Firemen's Pension Commissioner to the proper court of Travis County having jurisdiction of the subject matter.

■ We construe the language of Sec. 7 to require that the disability, to be pensionable, be causally connected with the performance of the firemen's duties. It was not the intention of the legislature to insure a fireman against all injuries that might be sustained during the period of his employment; the purpose of the Act is to provide a fund for aid to those who experience a disability having its origin in the work being done as a fireman. This construction is in keeping with the decisions of the courts of other states that have been called upon to construe similar language in pension acts. State Ex Rel King v. Board of Trustees of Firemen's Pension Fund of Kansas City, 192 Mo. App. 583, 184 S. W. 929; Tripp v. Board of Fire and Police Pension Commissioners of City of Fresno et al. 94 Cal. App. 720, 271 Pac. 795; Cosgrove v. Carey, 278 N. Y. 350, 16 N. E. 2d 361; McLaughlin et al. v. Rutherford, 207 Ark. 1094, 184 S. W. 2d 461; Board of Trustees of Firemen's Relief and Pension Fund for City of Tulsa v. Miller, 186 Okla. 586, 99 Pac. 2d 146.

Respondent is not now physically able to perform his duties as a fireman nor has he been since he left his employment with the fire department of the City of Houston. Admittedly his physical disability results from hypertrophic arthritis, which, at the time respondent left his employment, had affected both knees and one wrist, and which has now affected nearly all of the joints of his body. In denying respondent's application for a pension both the Board of Trustees and the Firemen's Pension Commissioner found, in effect, that there was no causal con-

nection between respondent's disabling disease and the performance by₍him of his duties as a fireman.

■ Respondent's right to judicial relief from the decision of the Firemen's Pension Commissioner is governed by the substantial evidence rule. That rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency. The party aggrieved by the administrative decision is not entitled to a trial de novo in court but must assume the burden of satisfying the courts that the administrative decision is illegal, arbitrary, or capricious; that is, that it is not reasonably supported by substantial evidence. Gulf Land Co. et al v. Atlantic Ref'g Co. et al, 134 Texas 59, 131 S. W. 2d 73; Fire Dept. of City of Ft. Worth et al v. City of Ft. Worth, 147 Texas 505, 217 S. W. 2d 664.

■ Although the application of the substantial evidence rule to judicial review of purely administrative decisions is of relatively recent origin in our jurisprudence (See The Administrative Law of Texas, 29 Tex. Law Rev. 266), the decisions of this court have now fairly well marked out its basic features. The administrative agency is the fact-finding body and the question to be determined by the courts is strictly one of law. Thomas et al v. Stanolind Oil & Gas Co. et al, 145 Texas 270, 198 S. W. 2d 420; Trapp et al v. Shell Oil Co., Inc., et al, 145 Texas 323, 198 S. W. 2d 424. Furthermore, the question must be determined by the courts from a consideration of the entire record in the case as that record has been made in the trial court. Trapp et al v. Shell Oil Co., Inc., supra, page 440; Hawkins et al v. Texas Co., 146 Texas 511, 209 S. W. 2d 338, 340; Jones v. Marsh et al, 148 Texas 362, 224 S. W. 2d 198, 202. The test is not whether the evidence admitted in court preponderates against the administrative decision (Thomas et al v. Stanolind Oil & Gas Co., et al, 145 Texas 270, 198 S. W. 2d 420), nor yet whether there is merely some evidence to support the decision. Hawkins et al v. Texas Co., 146 Texas 511, 209 S. W. 2d 338. The test is whether the administrative decision finds *reasonable* support in *substantial* evidence. Hawkins et al v. Texas Co., supra, page 340, Jones v. Marsh et al, supra. With this test in mind it becomes our duty, as it was the duty of the courts below, to evaluate the evidence in this case.

As heretofore indicated respondent sought to show that his disabling disease was caused by (1) a series of injuries sustained by him in the performance of his duties, (2) exposure, while wet, to extreme cold for long periods of time, and (3) a combination of his injuries and the exposure.

Respondent was the only witness who testified before the Commissioner and a transcript of his testimony at that hearing was introduced in evidence in the trial court and is contained in the record before us. The record before us contains also, of course, the testimony taken before the trial judge. This includes the testimony of respondent, the testimony of Dr. M. E. Petway, offered as a witness by respondent, and the testimony of Dr. Walter K. Long, offered as a witness by petitioner.

Respondent's testimony reflects that he went to work as an extra in the fire department of the City of Houston in October 1938, and was admitted to regular employment on June 1, 1939; that he was in good health when he entered the employment of the fire department with no symptoms of arthritis or rheumatism, and, except for the injuries to be mentioned, that he remained in good health until hypertrophic arthritis developed in his left knee in 1943. Respondent testified to a series of injuries growing out of the performance by him of his duties as a fireman. He testified to injuries to his left knee in July 1939, in January 1940, and in the summer of 1942, only the injury of July 1939 requiring medical treatment. On that occasion he bruised his knee in a fall and the knee became swollen requiring that it be tapped by a doctor. Clear fluid was drained from the joint and the knee was placed in an elastic band. Respondent was unable to work for about eight days. His ailment was diagnosed by Dr. Petway as traumatic arthritis and he was discharged as cured. Respondent testified to injuries to his right knee in the winter of 1941 and during the winter of 1941-1942. Only the first of these injuries required any medical treatment and neither of them caused him to lose any time from his duties. The first injury occurred when respondent stepped in a hole and twisted the knee. The joint became swollen and it was given a light ray treatment by the City's doctor. There was one rather violent injury to one of his wrists in 1943. Respondent testified to some six other accidents in which he was bruised, or shaken up, or skinned up, but none of them were sufficiently serious to require medical attention or to cause him to remain away from his duties. In addition to his injuries, respondent testified that on several occasions while performing his duties during the winter seasons of his employment he was exposed for long periods of time, while wet, to freezing and near-freezing temperatures.

■ In connection with respondent's theory that exposure caused or contributed to cause the hypertrophic arthritis with which his joints are affected, it is sufficient to state that the testimony

of the two doctors is in direct conflict. It was the opinion of Dr. Petway that the exposure to inclement weather, to which respondent testified, was the primary cause of respondent's diseased condition. On the other hand, it was the opinion of Dr. Long that hypertrophic arthritis is never caused by exposure; that exposure may cause temporary pain to result from an existing arthritic condition, but it never brings that condition into existence. The testimony of Dr. Long supports the decision of the Commissioner. This court would be wholly unjustified in saying that the opinion of Dr. Petway is entitled to credence and belief but that the opinion of Dr. Long is not so entitled. The testimony of Dr. Long, diametrically opposed, as it is, to that of Dr. Petway, compels us to conclude that the Commissioner's decision, in so far as it is founded upon an absence of causal relationship between respondent's disease and his exposure, is reasonably supported by substantial evidence.

Remaining for our determination is the question of whether the Commissioner's decision of absence of causal relationship between respondent's disease and the injuries and traumas sustained by him finds reasonable support in substantial evidence.

Drs. Petway and Long were in agreement that hypertrophic arthritis is a degenerative disease; that long continued irritation of a joint—housemaid's knees for example—, or a violent trauma or a series of traumas to a joint, may cause hypertrophic arthritis in the joint so used or injured, but that the arthritis so developed will be localized in the particular joint and will not spread to others; that hypertrophic arthritis manifests itself in a lipping process or bony outgrowths around the affected joints due to excessive deposits of calcium; that the excessive calcium deposits lead to a stiffness and a swelling of the joints; that the excessive calcium deposits may take place slowly, and, in early stages, may be discoverable only by the use of X-ray pictures.

It was the opinion of Dr. Petway that pain would result to the person affected within six months of the beginning of excessive calcium deposits and that it was wholly unlikely—though admitting that it was possible—that respondent had hypertrophic arthritis in its incipient stages in any of his joints prior to his first knee injury in July 1939. He did not recall making X-ray pictures of respondent's knee or of any of his joints at the time of his July 1939 treatment and was therefore unable to state what condition might have been reflected by

such pictures, but he testified that he found no indication of infection from his general examination. He testified also that hypertrophic arthritis is frequently caused by bad teeth or bad tonsils. Respondent admitted having pulled two of his front teeth in 1946 or 1947 because they were hurting him and that his molars had been extracted on advice of his doctor in an attempt to relieve his arthritic condition, with no beneficial results.

It was the opinion of Dr. Long that the excessive calcium deposits may be in progress for a number of years before creating a condition resulting in pain. He testified, as did Dr. Petway, that the general history of hypertrophic arthritis resulting from infection shows it to be progressive; that if it appears in one joint it usually appears in other joints with the passage of time.

At the time of the hearing before the trial court both of respondent's knees were in an unusually swollen condition, all of the joints of all of his fingers except one were swollen to three times their normal size, and there was pain and swelling in his wrists, his elbows, his shoulders, his ankles and his feet, and he had been bothered with a similar condition in his hips. It is not contended by respondent that the arthritic condition of all of his joints existed at the time he left his employment but he contends that he was totally incapacitated to perform his duties by the condition of his knees and one of his wrists which were affected at the time he left his employment. On the other hand, petitioner does not contend that respondent was not totally disabled at the time he left his employment but does contend that the present condition of the many other affected joints of respondent's body is a strong circumstance amounting to substantial evidence that the arthritic condition of the knees and the wrist resulted not from the traumas or injuries to those joints but from the same cause responsible for its presence in the other joints.

After a careful review of the evidence in the record, much of which has been detailed here, we are constrained to agree with petitioner. The opinion of Dr. Petway that the injuries to respondent's knees and to his wrist were a contributing cause of the hypertrophic arthritis existing in 1944 and now existing in those joints is not conclusive of the matter. This Court has said that "opinion testimony does not establish any material fact as a matter of law." Hood v. Texas Indemnity Co., 146 Texas 522, 209 S. W. 2d 345. There is as much reason

why an administrative decision should find reasonable support in circumstantial evidence of a substantial nature as there is that a jury verdict or a finding of a trial court should find support therein. The record here does not disclose that respondent suffered such type or series of traumas to his knuckles, his elbows, his ankles and his feet, as was calculated, according to the testimony of the doctors, to cause hypertrophic arthritis in those joints. Respondent as a witness declined to make any such claim. It was not incumbent on petitioner to establish the cause of respondent's disease; respondent had the burden of satisfying the Commissioner that the cause of his disease had its origin in the performance by him of his duties as a fireman. We think the fact that respondent has arthritis in nearly all of his joints of his body, to many of which there was no evidence of injury; the agreed testimony of Drs. Petway and Long that an arthritic condition caused by injury does not spread to uninjured joints but that hypertrophic arthritis caused by infection does usually affect many joints; the fact that respondent's teeth were hurting him in 1946 or 1947, all considered in the light of Dr. Long's testimony that hypertrophic arthritis may gradually develop over a period of years without any pain or other subjective symptoms, was substantial evidence reasonably supporting the decision of the Firemen's Pension Commissioner that the diseased condition of respondent's knees and wrist was not caused by the injuries sustained to those joints.

The judgments of the Court of Civil Appeals and of the trial court are reversed and judgment is here rendered that respondent take nothing by his suit.

Opinion delivered July 18, 1951.

Rehearing overruled October 3, 1951.