James O. GERST, Savings and Loan Commissioner of the State of Texas, et al., Appellants,

v.

AMERICAN SAVINGS AND LOAN ASSOCIATION OF HOUSTON, Appellee.

No. 11259.

Court of Civil Appeals of Texas.

Austin.

Nov. 18, 1964.

Rehearing Denied Dec. 9, 1964.

. Waggoner Carr, Atty. Gen., Joe R. Long, Asst. Atty. Gen., Black & Stayton, Austin, for appellants.

Clark, Thomas, Harris, Denius & Winters, Conrad Werkenthin, Mary Joe Carroll, Austin, Fred Abbey, Houston, for appellee.

PHILLIPS, Justice.

American Savings and Loan Association of Houston, hereinafter called appellee, brought suit in the trial court seeking to overturn an order of the Savings and Loan Commissioner denying appellee's application to establish a branch office at 410 Main Street in the northern portion of the central business district of Houston.

Houston First Savings Association, Home Savings and Loan Association and Benjamin Franklin Savings Association intervened and aligned themselves with the Savings and Loan Commissioner in an attempt to sustain the order. All of these parties, unless names individually, will hereinafter be designated as appellants.

After trial, the District Court entered judgment setting aside the Commissioner's order and issued a writ of mandamus directing and commanding the Commissioner to grant appellee's application for the branch. The State and the intervenors have appealed the judgment to this Court.

We affirm the judgment of the trial court.

Appellee's application for the branch here under consideration was filed prior to the effective date of the present Savings and Loan Act,[1] and is therefore controlled by Art. 881a–2, Vernon's Ann.Civ.St.,[2] the

---

1. Art. 852a, Vernon's Ann.Civ.St.

2. "When any persons shall file a proposed charter or articles of agreement as is elsewhere herein provided, if it appears to the satisfaction of the Banking Commissioner of Texas that the minimum capital required has been paid in cash into the treasury of the association upon subscriptions for shares, the Banking Commissioner of Texas shall ascertain from the best sources at his command, and by such investigation as he may deem necessary, the expense of such in-

previous statute, the pertinent part being as follows:

"\* \* \* whether the public convenience and advantage will be promoted by allowing such proposed building and loan association to be incorporated and engaged in business, and whether the population in the neighborhood of such place and in the surrounding country affords a reasonable promise of adequate support for the proposed building and loan association."

After a hearing, the Commissioner denied the appellee's application for the branch by an order containing the following language:

"The applying association has adequate reserves and surplus to warrant the additional places of business; the applying association has operated its principal office for at least three (3) years successfully, profitably, properly and in accordance with law, but the proposed operation of the additional office will impair the applying association's ability to carry on its overall operation; the public convenience and advantage in the neighborhood proposed to be served and in the surrounding country will not be promoted by allowing the proposed additional office to be established and engage in business at the

proposed location, the volume of business there is not such as to indicate that a profitable operation is probable within a reasonable period of time, and the public within such area is being adequately served; the proposed operation will unduly injure other associations operating in the neighborhood of the proposed location and the surrounding county; and a separately enclosed office area within which no activity or business except that which is related to the affairs or services of the association is proposed."

Appellant intervenors are existing associations with their main offices in downtown Houston.

Appellants are before this Court on four points of error. The first three briefed together are that appellee failed to prove that there is no substantial evidence supporting the Commissioner's finding that the volume of business in the proposed location is not such as to indicate a profitable operation within a reasonable period of time; that the public convenience and advantage in the neighborhood proposed to be served and in the surrounding country will not be promoted by the proposed office; and that the public in the area is being adequately served. Appellants' fourth point of error is that appellee failed to prove that there is no sub-

vestigation to be paid by the incorporators, whether the character, responsibility and general fitness of the persons named in the articles of incorporation are such as to command confidence and warrant belief that the business of the proposed building and loan association will be honestly and efficiently conducted in accordance with the intent and purpose of this Act, and whether the public convenience and advantage will be promoted by allowing such proposed building and loan association to be incorporated and engaged in business, and whether the population in the neighborhood of such place and in the surrounding country affords a reasonable promise of adequate support for the proposed building and loan association. If it shall be satisfied concerning the several matters specified, the Banking Commissioner of Texas shall issue under his official seal a cer-

tificate reciting in substance the filing in its office of the articles of incorporation; that such articles conform to all requirements of the law, and that they have been approved, whereupon the persons named in the articles of association, their associates and successors, shall become a corporate body for the period for which they were organized, and shall exercise such powers as are herein granted, and such other powers as are necessary to enable such association to carry out the purpose of its organization, non inconsistent with the provisions of this Act, but before such association shall proceed to do business it shall adopt and have approved by the Banking Commissioner of Texas by-laws for the regulation and management of its business, not inconsistent with the provisions herein provided. Acts 1929, 41st Leg., 2nd C.S., p. 100, ch. 61, § 2."

stantial evidence supporting the Commissioner's finding that the proposed operation will unduly injure other associations operating in the neighborhood of the proposed location and the surrounding country.

■ The facts of this case and the law applicable thereto bring it within the Supreme Court's decision in Gibraltar Savings & Loan Association v. Falkner, 371 S.W. 2d 548. In Gibraltar the Court affirmed the judgment of the trial court reversing an order of the Commissioner that denied a savings and loan branch to the applicant therein. The Court said:

"This appeal is governed by the substantial evidence rule. First: the order of the Commission is presumed to be a legal and valid order. Second: the burden is on the one appealing from the Commissioner's order to show that the order appealed from is not reasonably supported by substantial evidence, existing at the time of the entry of the order by the Commissioner. This showing must be made at the trial court hearing. *This may be done by a showing that all of the evidence available to the Commissioner, and given in the trial court on appeal, so conclusively demands an affirmative finding on all requirements that a negative finding on any requirement can have no support in substantial evidence; therefore negative findings are arbitrary."* Citing cases. (Emphasis added.)

The rules of the Building and Loan Section of the Finance Commission and Banking Commission which were the basis for the Commission's ruling in Gibraltar are similar to the provisions of Art. 881a–2 which govern the case at bar.

From the evidence before this Court as adduced in the trial court, we find that appellee has, in outline, presented the following case: (a) Appellee began operation in 1960 with $312,500 capital and has grown in less than four years to over $15,000,000 in total assets with approximately $600,000 in capital, surplus and reserves; (b) that appellee's principal field of service is in the field of loans under $10,000 made in a large proportion to Negroes and Latin Americans; (c) that there is a need for the branch office in the area requested due to proximity and access to the class sought to be served and that due to such proximity and access a successful operation can reasonably be anticipated; that the group or class sought to be served are of a sufficient number to insure a profitable operation; (d) that the greater percentage of intervenors' business, the nearest competitors of the proposed branch, is in the field of loans of above $10,000.

In attempting to present substantial evidence to uphold the Commission's order, the State and intervenor appellants relied on (a) cross examination of appellee's witnesses in an attempt to discredit their testimony; (b) one witness, the secretary of one of the appellant intervenors.

Appellee's president, Mr. Ralph B. Lee, in addition to his testimony concerning the growth of his company as outlined above, stated that he had, in the past, organized two savings and loan companies, a mortgage company and a bank and trust company. Lee stated that in the course of this financial career, he learned that a profitable savings and loan business could be built from loans made to the lower income groups and that he had sought to project his association's endeavors into this field and had done so with considerable success. Numerous exhibits were presented by competent witnesses outlining the district sought to be served as the northwest quadrant of the city of Houston. That the proposed branch office itself at 410 Main Street would be the only savings and loan institution in the downtown area bordered by Texas Avenue on the South and Buffalo Bayou on the north. That this downtown area was served by five transit companies which funnelled the class of persons sought to be served by or near the proposed location. That access and location were of paramount importance to the success of such branch.

In addition to attempting to show that the proposed branch office would be ideally located for access to the entire northwest quadrant of the city of Houston, appellee pointed out that in the downtown area surrounding the proposed branch itself were the following: Two office buildings, two hotel facilities, office of the T. J. Bettes Co. characterized as the largest mortgage lending firm in the country, numerous small stores and proprietorships conducting business in the area, the Harris County Courthouse complex, the Houston National Bank and Citizens State Bank, five bus routes serving the quadrant in question, extensive parking space recently added to the area, the civic center being built immediately west of the area, a six million dollar performing arts center to be built adjacent to the south portion of the area.

In addition, competent testimony was presented by appellee that the projected population for Harris County by 1980 could reasonably be expected to be 2,480,000; that 83,000 new home units would be built between now and 1980 in that quadrant of the city appellee is seeking to serve.

After having presented credible testimony that it sought to serve a certain class or group desiring loans of $10,000 or under, that the geographic area in question (consisting of the downtown area in which the proposed branch is to be located and the northeast quadrant of the city) has a sufficiency of this class or group to insure a successful operation, appellee presented evidence that while 78% or 80% of its loans were under $10,000, loans of $10,000 or less made by appellant intervenors were 11%, 8%, 7% of their total volume. Appellant offered testimony that by specializing in smaller loans it was able to charge interest in the neighborhood of 7% which is higher than that generally received for the appellant intervenors' loans of larger amounts.

Appellants offered no evidence that the establishment of the proposed branch would injure appellant intervenors in any manner whatsoever.

As stated above, appellants' evidence consisted of cross examination of appellee's witnesses and one witness. Through cross examination appellants sought to show that there are either four or five savings and loan company branches serving the northeast quadrant of the city. No detail concerning their size, location or type of loans made is in the record. That the business district between Texas Avenue and Buffalo Bayou is a depressed area and does not have a sufficient number of the group sought to be served to insure a profitable business. That the group or class sought to be served in the northeast quadrant of the city having been transported into the area in question could not tarry long enough between transfers to do business at the proposed branch or they could ride the bus across Texas Avenue and do business with intervenors.

Appellants' witness was Mrs. Mary A. Grigsby, Secretary of Houston First Savings and Loan, an intervenor in this case. Mrs. Grigsby testified that of the 6,536 home loans on the company's books, 3,970 were loans of under $10,000 and that this is 60% of their entire loans. On cross examination of this witness it was developed that a large portion of these loans were purchased from the Veteran's Administration in a block and were not made by intervenor to individuals in the area. Mrs. Grigsby also testified that she did not believe that the type or group of people generally disembarking from busses in the downtown area proposed to be served were generally of the type to make loans with savings and loan companies; that if they did so desire, Houston First would be happy to serve them. That Kress, Grant's and Penny's stores which cater to the lower income groups are near Houston First.

It would serve no good purpose to unduly prolong this opinion with the answers given appellants' attorneys' questions on cross examination. Appellee's case was not shaken to any appreciable degree. These questions, at best, may have planted some doubt as to certain facets of appellee's testimony and in creating some doubt could be

classed as some evidence; however, *some* evidence is not *substantial evidence*. See Board of Firemen's Relief & Retirement Fund Trustee of Houston v. Marks, 150 Tex. 433, 242 S.W.2d 181, 27 A.L.R.2d 965.

■ Likewise, Mrs. Grigsby's testimony was some evidence as to the operation of one of several intervenors in a city that presently has an overall population of one million and her opinion as to whether the class of persons appellee seeks to serve will make potential savings and loan customers is some evidence; however, it is not substantial evidence. It is interesting to note that the testimony discloses that intervenor Houston First Savings has increased its total assets from $64,500,000 in 1961 to $109,500,000 in 1963. Mrs. Grigsby did not testify that if appellee was allowed to open the proposed branch Houston First would be unduly injured. We adopt the following quotation from Gibraltar "* * * all of the evidence available to the Commissioner, and given in the trial court on appeal, so conclusively demands an affirmative finding on all requirements that a negative finding on any requirement can have no support in substantial evidence."

Appellants contend that appellee has failed to show that the four or five savings and loan branches presently located in the northeast quadrant of the city of Houston are not adequately serving this sector. While such evidence is a factor in the application for the establishment of any savings and loan association or branch office thereto, this fact may be inferred from other substantial evidence such as that of appellee outlined above. This is especially true where those attacking the application offer no evidence whatsoever in rebuttal as to the adequacy of service of these particular branches. In other words, the associations who had branch offices in the northeast quadrant of the city are not parties to this suit. Appellee's evidence compels our conclusion that

the branch sought will promote the public convenience and advantage in this neighborhood, that the operation will be profitable, that there is a need for the additional service and that the proposed branch will not unduly injure other associations operating in the neighborhood. Where such a case is supported by substantial evidence, specific evidence that other branches in the area are not adequately serving such area may be inferred. Such inference is further strengthened when the evidence indicates phenomenal growth of all associations concerned, whether applicant or protestant, which are located in a city such as Houston whose growth in the past has been equally phenomenal and whose projected growth protends the same.

Applicants argue that in denying this application the Commissioner "* * * undoubtedly considered the fact that appellee has the privilege under the rules to move its branch as far as a mile south without further permission and to thus do injury not only to existing downtown associations but, by virtue of the unique position of being a suburban association with a downtown branch, to other suburban associations as well." There is no evidence in the record to support this argument.

■ Appellee objects to evidence admitted at the trial as to the location and routes of bus lines serving the area in question as being based on pamphlets prepared by parties who did not appear in court and thus hearsay testimony. We overrule this point. There is adequate testimony by a former planning consultant to the city as to bus service in the area and if such pamphlets were hearsay, their admission was harmless.

The judgment of the trial court is affirmed.

Affirmed.