**FIREMEN AND POLICEMEN'S PENSION FUND BOARD OF TRUSTEES OF SAN ANTONIO, Texas, Appellant,**

v.

**Joaquin B. GUERRERO, Appellee.**

No. 14388.

Court of Civil Appeals of Texas.

San Antonio.

Sept. 22, 1965.

Rehearing Denied Oct. 27, 1965.

Harvey L. Hardy, San Antonio, for appellant.

Franklin S. Spears, San Antonio, for appellee.

CADENA, Justice.

This is an appeal by the Firemen and Policemen's Pension Fund Board of the City of San Antonio, Texas, hereinafter designated as the "Board," from a judgment of the trial court setting aside the action of the Board in reducing the pension of appellee, Joaquin B. Guerrero, plaintiff below.

In November, 1951, plaintiff, then a member of the Police Department of the City of San Antonio, applied to the Board for a disability pension under the provisions of Section 10 of Art. 6243f, Vernon's Ann. Tex.Stats. At that time plaintiff complained of a condition in his legs, particularly the knee joints, which made it impossible for him to perform his duties as a policeman. After the Board had denied his application for a pension, plaintiff filed suit in a district court of Bexar County. In 1952 the trial court in that case entered judgment finding that plaintiff was so permanently disabled as to incapacitate him from performing his duties in the Police Department, and decreeing that plaintiff was entitled, as of November 4, 1951, to a pension in the amount of $122.50 per month "so long as plaintiff is disabled." The amount of pension awarded plaintiff under this judgment was the maximum disability

pension payable under the provisions of the statute.

In 1961 the Board, acting under the provisions of Sec. 15 of Art. 6243f, directed plaintiff to submit to a physical examination by Dr. P. L. Day and Dr. David Oliver for the purpose of determining whether there had been any change in the degree of plaintiff's disability. On November 30, 1961, the Board, after a hearing at which it considered the reports of such doctors and of plaintiff's personal physician, reduced plaintiff's pension to $49.00 per month. This represented the maximum reduction permissible under the statute in a case involving a pensioner who, like plaintiff, had served five years in the Police Department.

Plaintiff then filed the instant suit and on November 17, 1964, the court below, finding that there was no substantial evidence to support the Board's action, entered judgment ordering the Board to reinstate plaintiff's pension of $122.50 per month. The judgment also awarded plaintiff the sum of $2,646.00, representing the difference between $122.50 per month and the sum of $49.00 per month which had been paid to plaintiff during the period from November 30, 1961, to October 30, 1964.

Both parties agree that the Board's order reducing plaintiff's pension must be upheld if it is reasonably supported by substantial evidence produced during the trial in the district court. See Board of Firemen's Relief and Retirement Fund Trustees of Houston v. Marks, 150 Tex. 433, 242 S.W. 2d 181, 27 A.L.R.2d 965 (1951).

In the trial court the parties stipulated that medical reports of doctors who had examined plaintiff prior to November 30, 1961 (the date of the reduction in the pension) could be introduced in evidence "as if the same were the sworn testimony of such doctors." The Board, under this stipulation, introduced the medical reports prepared by Dr. Oliver and Dr. Day, to whom plaintiff had reported for examination in September, 1961.

The report of Dr. Oliver stated that plaintiff moved about the examination room and the examining table with complete ease and with no apparent pain or discomfort, and that there was full range of painless motion in both knees. Dr. Oliver found no swelling or diffusion in either knee joint, nor any indication of rheumatoid arthritis or of any degenerative or hypertrophic osteoarthritic changes beyond that to be expected in a man of plaintiff's age. Dr. Oliver concluded that plaintiff had had a condition in both knees known as intermittent hydrops of the knees, but, finding no evidence of disability relating to the knees or lower extremities, he stated that, in all probability, such condition had terminated.

Dr. Day's report states that an examination of plaintiff revealed that he walked with a normal gait and that the appearance of his ankles and knees was normal. He found full range of movement in the ankle and knee joints in all directions. The x-rays taken at Dr. Day's direction revealed no significant abnormalities of the bone structures other than some minimal arthritic change commensurate with plaintiff's age. Dr. Day, after concluding that plaintiff, in September of 1961, was not significantly disabled by any condition involving the lower extremities, mentioned the possibility "that some anxiety state secondary to the problem with his pension is responsible for the complaints he has described in the lower extremities."

Dr. R. O. Monsalvo, an orthopedic surgeon, testified on behalf of plaintiff. He had examined plaintiff in 1949, 1951, 1952, 1961, and 1964. He testified that in 1952 plaintiff experienced pain in the knees which became more pronounced upon excessive walking or prolonged standing, and that tests performed by him at that time revealed abnormal sedimentation rates. He stated that plaintiff was suffering from a chronic type of progressive osteoarthritis with an associated osteochondritic condition, and that plaintiff's condition was essentially the same in 1961 as in 1952, "if not worse."

Dr. Monsalvo agreed that findings based on study of x-rays of plaintiff's legs were "minimal," but he said that plaintiff's disability was difficult to determine from x-rays alone, and that unless plaintiff was examined "clinically," there would be a tendency to minimize the degenerative changes revealed by the roentgenograms.

Plaintiff testified, in effect, that his condition in 1961 was worse than at the time when he was granted his original pension. He described his difficulty in standing for long periods of time and said it was impossible for him to walk more than a few blocks without experiencing pain and swelling of the knees.

The record, thus, reflects a sharp conflict in the testimony concerning plaintiff's condition at the time his pension was reduced. The Board's testimony reflects that in 1961 plaintiff was suffering from no significant disability. The evidence offered on behalf of plaintiff, on the other hand, indicates that plaintiff's condition is at least as bad as it was when he was originally pensioned.

Plaintiff advances two theories in support of the trial court's finding that the order of the Board reducing his pension is not supported by substantial evidence. (1) He asserts that the medical reports introduced by the Board lack probative value because Dr. Oliver and Dr. Day did not, in fact, examine him. (2) He contends that the action of the Board must be set aside because there is no substantial evidence that there has been a change in the degree of plaintiff's disability since the time that he was originally pensioned.

Plaintiff testified that Dr. Oliver's examination was restricted to questions relating to plaintiff's name, address and age. Dr. Day, according to plaintiff, also limited himself to questions relating to the identity, age and address of plaintiff, although he did direct plaintiff to have some x-rays taken.

However, the medical reports themselves effectively contradict plaintiff's testimony. Dr. Day's report states that the findings

and conclusions embodied therein were based "on examination." Dr. Oliver's report asserts that his findings were revealed by "physical examination," and it describes plaintiff's movements not only in the examination room, but on the "examining table." This report further refers to statements made by plaintiff to Dr. Oliver which would not have been elicited if the consultation had been limited to questions concerning plaintiff's name, age and address.

■ The reports of Dr. Oliver and Dr. Day, admitted into evidence pursuant to the stipulation set out above, constitute substantial evidence which supports the finding by the Board that plaintiff was not significantly disabled in 1961. 53 Tex.Jur. 2d, Stipulation, Sec. 7, p. 319, and Sec. 8, p. 320; Switzer v. Mullally, 7 Cal.App.2d 444, 46 P.2d 215.

Plaintiff's second contention is that there is no substantial evidence supporting a finding that there had been any change in the degree of his disability since 1951. Sec. 15 of Art. 6243f authorizes a change in the amount of a pension only if there has been a change in the degree of the pensioner's disability. There is substantial evidence of such a change.

■ In 1952, at the time the district court ordered the Board to grant plaintiff a pension of $122.50 a month, Sec. 10 of Art. 6243f provided that no person should be awarded a pension "until disability has been proved to be continuous and wholly incapacitating for a period of not less than ninety (90) days." The 1952 judgment was, therefore, necessarily based on a judicial finding that plaintiff was wholly incapacitated. If plaintiff's disability in 1952 was such as to be "wholly incapacitating," and in 1961 there was no "significant disability," it must be concluded that there has been a decrease in the degree of plaintiff's disability.

■ Since there is substantial evidence which reasonably supports the finding that there has been a decrease in the degree of

plaintiff's disability since the time he was originally granted his pension, it follows that the trial court erred in setting aside the action of the Board.

The judgment of the trial court is reversed and judgment here rendered that plaintiff take nothing.