**Lonnie C. McGUIRE, Appellant,**

v.

**OVERTON MEMORIAL HOSPITAL et al., Appellees.**

**No. 769.**

Court of Civil Appeals of Texas, Tyler.

Sept. 12, 1974.

Rehearing Denied Oct. 10, 1974.

McGuire, Levy & Collins, John È. Collins, Irving, for appellant.

Kenley, Boyland, Hawthorn, Starr & Coghlan, Herbert Boyland, Longview, for appellee, Overton Memorial Hospital.

Gordon Wellborn & Rex Houston, Blake Bailey, Henderson, for appellee, Dr. Jules R. Levin.

McKAY, Justice.

This is a summary judgment case. Plaintiff[1] Lonnie C. McGuire brought this suit against Overton Memorial Hospital and Dr. Jules Levin for injuries received when he fell trying to get out of bed while a patient in the hospital. He alleged that the hospital was negligent in failing to provide a bed with sideboards or guard rails, in failing to take proper cognizance of plaintiff's condition and failing to anticipate and guard against the accident, in failing to exercise proper care and attention toward plaintiff in his weakened state, and in failing to provide adequate nurses and attendants to sufficiently care for plaintiff. He alleged that Dr. Levin failed to require the hospital to provide plaintiff with sideboards or rails to prevent him

---

1. Parties are designated as they were in the trial court.

from falling from his bed, that the doctor failed to exercise proper care after ordering strong medications, and that he failed to require the presence of an adequate number of nurses and attendants to sufficiently care for plaintiff in his weakened condition. Both defendants answered by general denial, and the hospital claims governmental immunity alleging that the operation of the hospital was a governmental function of the City of Overton.

The trial court granted the motion of each defendant for summary judgment and plaintiff appeals.

Plaintiff contends in his four points of error (1) that both defendants failed to establish by their summary judgment proof that there is no genuine issue of fact as to one or more of the essential elements of plaintiff's cause of action; (2) defendant Levin did not establish, as a matter of law, that there are no genuine issues of fact; (3) that Levin's summary judgment proof consisted only of his own deposition, he being an interested witness; and (4) that the hospital was liable under the Texas Tort Claims Act.

Plaintiff was admitted to the hospital on November 19, 1970, with the diagnosis of "possible acute appendicitis," and Dr. Levin was his treating physician. Surgery was performed the following morning by Dr. Levin who found an "extensive inflammatory process to the point of gangrene."

On December 4, 1970, plaintiff, while attempting to get out of his bed, fell and sustained a fracture to his right hip. Dr. Levin did not order bed rails for plaintiff and the bed in which he was placed was not equipped to take bed rails. Dr. Levin testified in his deposition that plaintiff's family was instructed to have someone attend plaintiff at all times during his stay in the hospital and the family agreed to do so. Plaintiff's wife was in the room with him when he fell, but she was apparently asleep. Plaintiff had been taking medication since his surgery, and at 9:00 p. m.

prior to his fall out of bed around midnight, he had received a carbrutal capsule, a sleep-inducing medication. He had not been able to get out of bed without assistance prior to his fall, but he had sat on the side of the bed and had sat in a chair a few times with assistance.

Dr. Levin acknowledged that whether bed rails were ordered, or should have been ordered, he was the person who would have done so although sometimes nurses put them up when they feel a patient needs them. Bed rails were available in the hospital at the time.

After sustaining the hip fracture in his fall Plaintiff was transferred by Dr. Levin to Medical ·Center Hospital in Tyler where Dr. McCarthy performed orthopedic surgery.

Rule 166–A, Texas Rules of Civil Procedure, provides that a summary judgment shall be rendered if it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41 (Tex.Sup.1965). The evidence must be viewed in the light most favorable to the party opposing the motion. Valley Stockyards Co. v. Kinsel, 369 S.W. 2d 19 (Tex.Sup.1963). The question to be determined is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of plaintiff's cause of action. Gibbs v. General ·Motors Corp., 450 S.W.2d 827 (Tex. Sup.1970).

The principal evidence relied upon by plaintiff-appellant is contained in the deposition of Dr. Levin. His deposition was taken on April 1, 1972, and plaintiff's first amended petition was filed August 16, 1972. The hospital's brief makes the un-

challenged statement that Dr. Levin was not made a party until August 16, 1972, when the amended petition was filed, and, therefore, was a disinterested witness at the time he gave deposition testimony. We are not prepared to infer his answers would have been different had he then been a party at the time his deposition was taken.

In his deposition Dr. Levin testified that the plaintiff was disoriented immediately after his surgery, and that there were occasional periods up through the date of his fall that he was somewhat disoriented which Dr. Levin attributed "to a certain amount of toxicity and some febrile reaction." He further testified he thought plaintiff was doing well prior to the time he fell out of bed on December 4th, and that plaintiff had not been semi-comatose or disoriented on that date. Portions of Dr. Levin's testimony we quote:

"Q. Had Mr. McGuire been able to get out of bed prior to that time?

A. I believe that I left an order prior to that saying he could dangle, which meant he could sit up on the side of the bed, and if he felt up to it, they could put him in a chair.

\* \* \* \* \* \*

Q. In fact, was he able to sit up after that time?

A. Yes, I believe he did.

\* \* \* \* \* \*

Q. \* \* \* What medication had he had in the twenty-four hours prior to the time that he fell, Doctor?

\* \* \* \* \* \*

A. He was given a carbrutal capsule for sleep, and that was shortly after midnight December 3rd. He also had some oxygen in his room, and he was given some for a short period of time. He also received on that date Azo Gantrisen.

Q. What is that, Doctor?

A. That is the urinary chemotherapeutic drug. He also received lomatil, which is an antidiarrheal medication. He was also given two grams of paregoric, and was given some Kolantyl gel. This he was given between 8:00 A. M. and 11:00, the morning of December 3rd. He received Azo Gantrisen during the day according to the way it was ordered, and he received lomatil. At 7:00 P. M. that night, he was given some Terpin Hydrate with codeine for a cough that he had. At bedtime, at 9:00 P. M., he was given a carbrutal capsule.

\* \* \* \* \* \*

Q. Is that a sleep inducing medication?

A. That is a sleep inducing medication.

\* \* \* \* \* \*

Q. Now Doctor, you did not at any time in your physician's orders order bed rails, did you?

A. No, I did not.

Q. Why didn't you?

A. The bed he was in, in the room he was in, I believe, was not equipped to take bed rails.

Q. Why didn't you put him in one that was equipped for bed rails?

A. Well, this was a room that was selected by him. I don't put every patient in every room where a hospital bed will take a bed rail, it depends on the individual.

Q. Didn't you feel at that time, with reference to the condition of the patient that it would have been advisable to have had bed rails up on that bed?

A. Well, the family was instructed to have somebody there with him all

of the time. They told me that there would be somebody with him constantly, and I let it go at that.

Q. Well, I understand that, Doctor, but I am still wanting to know, didn't you in fact feel as a medical doctor that it would be better medical practice to have bed rails up on that bed?

A. Not necessarily.

Q. Don't you feel that there would be much less likelihood of somebody falling out of the bed, if there was a bed rail?

A. There would be less likelihood, yes. But, I have seen patients where they have climbed over the bed rails if they wanted to get out of bed badly enough.

Q. Doctor, tell me, do you think Mr. McGuire was in a condition to climb over the bed rails?

A. No, I don't think he was.

\* \* \* \* \* \*

Q. Isn't it good medical practice to prescribe bed rails for patients like Mr. McGuire?

A. It probably is.

Q. You were the treating physician, were you not, Doctor, of Mr. McGuire?

A. Yes.

Q. You were the only treating physician?

A. Right.

Q. And as such with reference to other employees, or other nurses, or parties there in the hospital, at least you are the captain of the ship, you were running the show insofar as Mr. McGuire was concerned?

A. Yes.

Q. And being in that position, is it not correct to say that if bed rails were to have been ordered or should have been ordered that you were the one who would have done it?

A. Yes. But occasionally, the nurses will put them up when in their judgment they feel a patient needs them.

Q. Who would be the person in charge of making that decision if it had come to light at a time when you were not there, doctor, that night?

A. It would have been the charge nurse.

\* \* \* \* \* \*

Q. \* \* \* Was it your medical opinion that he did not need bed rails?

A. Not necessarily. I might have ordered some bed rails early in his postoperative period, if they were available for that bed.

\* \* \* \* \* \*

Q. And having a member of the family there and the way that he was recovering, you didn't think it was necessary for either you or the hospital to provide him with any other type of nurse or any bed rails, did you?

A. No, sir.

Q. So as far as you could tell from the instructions you gave the hospital, the hospital followed your instructions, did they not?

A. Correct.

Q. And they provided this man with the same type of treatment that the usual hospital would have done in the exercise of ordinary care?

A. Yes."

The testimony of Dr. Levin also shows that Plaintiff's recovery was routine, un-

eventful and normal, and that he saw no necessity for bed rails fourteen days after his surgery. He further testified that so far as he could tell the hospital provided this man with the same type treatment that the usual hospital would have done in the exercise of ordinary care.

It is noted that the only evidence in the record on the question of negligence is that of Dr. Levin in his deposition. He was the attending physician, and his testimony on the crucial issues was opinion evidence, and even though he was an "expert" witness, opinion testimony does not establish any material fact as a matter of law. Hood v. Texas Indemnity Ins. Co., 146 Tex. 522, 209 S.W.2d 345 (1948); Board of Firemen's Relief & Retirement Fund Trustees of Houston v. Marks, 150 Tex. 433, 242 S.W.2d 181, 185 (1951).

On the question of opinion testimony, it is stated in Luttes v. State, 159 Tex. 500, 324 S.W.2d 167, 189 (1958):

"While in a limited sense, all testimony may involve opinions of the witnesses, the proof here was peculiarly of the 'opinion' or 'expert' type, *and the occasion has to be at least highly exceptional when such testimony, even though not contradicted by an opposing expert, must be deemed true as a matter of law* * * *. 'That character of testimony is but evidentiary and is never binding upon the trier of facts * * *.' " (Emphasis added.)

■ Dr. Levin's testimony is uncontradicted, but he is an interested witness, and, since his testimony is opinion evidence, "it cannot be considered as doing more than raising an issue of fact, unless it is clear, direct and positive and there are no circumstances in evidence tending to discredit or impeach such testimony." Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., supra. From the record we cannot conclude that the testimony of Dr. Levin may be deemed true as a matter of law or that the summa-

ry judgment proof shows conclusively that he exercised proper care in failing to order bed rails. King v. Flamm, 442 S.W.2d 679 (Tex.Sup.1969). Consequently, the summary judgment proof does not establish as a matter of law that there is no genuine issue of fact as to plaintiff's suit against Dr. Levin.

The plaintiff's contentions against the defendant hospital are based on several allegations of negligence, each of which is alleged to be the proximate cause of plaintiff's injuries. The hospital originally answered with a general denial. A supplemental answer was later filed contending that governmental immunity would preclude the hospital from being liable for any negligence. The hospital's motion for summary judgment was therefore based on the proposition that there is no genuine fact issue present and that the concept of governmental immunity precludes any liability.

This being a summary judgment case we do not know whether the trial court based its summary judgment for the hospital upon its claim of governmental immunity or whether in the opinion of the court there was, as a matter of law, no genuine issue of fact as to essential elements of plaintiff's cause of action against the hospital. Therefore, each possibility must be considered.

■ When a defendant moves for summary judgment, he must assume the negative burden of clearly showing as a matter of law that the plaintiff has not established an issue as to one or more elements of plaintiff's cause of action. (Gibbs v. General Motors Corp., supra), and any doubt as to the presence of any material fact issue must be resolved against the movant. Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Company, supra. The issue of negligence is ordinarily one of fact, requiring a full development of all facts as a basis for a proper finding. When the evidence presented in a negligence case shows that

the facts have not been sufficiently well-developed, then a summary judgment is improper. Loud v. Sears, Roebuck & Co., 262 S.W.2d 548 (Tex.Civ.App.—Dallas, 1953, n. w. h.). The record before us shows no full development of facts regarding any negligence on the part of the hospital. The petition of the plaintiff was originally answered by the hospital with a general denial. The general denial puts the plaintiff on proof of every fact essential to his case and all material facts asserted by the plaintiff except those which are required to be denied under oath are put into issue. Shell Chemical Co. v. Lamb, 493 S.W.2d 742 (Tex.Sup.1973). It is well settled in this state that questions of negligence and proximate cause are usually issues of fact which cannot be determined on motion for summary judgment. Mabry Foundry and Machine Co. v. Howard Motor Co., 422 S.W.2d 238 (Tex.Civ.App.—Beaumont, 1967, n. w. h.); Fuller v. Southwestern Greyhound Lines, Inc., 331 S.W.2d 455 (Tex.Civ.App.—Austin, 1960, n. r. e.); Sullivan v. Sisters of St. Francis of Texas, 374 S.W.2d 294 (Tex.Civ.App.—San Antonio, 1963, n. w. h.). Therefore, upon the filing of the general denial, each material contention of negligence alleged by the plaintiff became a fact issue to be determined at a trial on the merits. This combined with the proposition that allegations of negligence and proximate cause are fact questions, leads us to conclude that the summary judgment for the hospital based on the absence of material fact issues was erroneous.

The defendant-hospital also contended in a supplemental answer, filed simultaneously with its motion for summary judgment, that as a matter of law it was entitled to rely on the defense of governmental immunity. The plaintiff claims his case falls within the purview of section 3 of the Texas Tort Claims Act, Article 6252–19. The evidence in the record consists of the deposition testimony of Dr. Levin and it alone is insufficient to determine the duty, if any, of the hospital to the plaintiff under the circumstances here shown. As illustrated by the above-quoted excerpts from Dr. Levin's deposition, however, the hospital, through its servants or employees on some occasions installed bed rails without an order from a doctor.

The rule has been stated that if after reviewing the entire record the court is convinced that reasonable men, confronted by such a showing, might differ as to the truth of a controlling fact proposition, a genuine issue is present and there can be no summary judgment. Layne v. Darnell, 454 S.W.2d 474 (Tex.Civ.App.—Fort Worth, 1970, n. r. e.) Further, an issue of fact also exists when conflicting inferences may be drawn from undisputed evidentary facts. Nix v. Davis, 358 S.W.2d 225 (Tex.Civ.App.—Houston, 1962, n. w. h.). We think that from the record here presented conflicting inferences may be drawn as to the nature of any duty owed plaintiff by the hospital to install bed rails. The record does not make clear whether the placing of the bed rails on the bed was an administrative duty on the part of the nurses or employees of the hospital or whether the bed rails should have been installed only upon the order of the doctor. To constitute negligence there must be a violation of a duty owed to the person making a claim on the grounds of negligence. Coleman v. Hudson Gas and Oil Corp., 455 S.W.2d 701 (Tex.Sup.1970). Because of the doubt existing as to any duty on the part of the hospital to install bed rails under the prevailing circumstances, we are unable to determine the applicability, if any, of the Tort Claims Act.

In seeking to determine the validity of the judgment in favor of the hospital, we are faced with an incomplete development of necessary facts. In our opinion, the summary judgment proof applicable to the hospital does not establish as a matter of law that there is no genuine issue of fact. Gibbs v. General Motors Corp., supra.

Judgment of the trial court as to both defendants is reversed and the cause remanded.