**ROYAL CREST, INC., et al., Appellants,**

**v.**

**The CITY OF SAN ANTONIO et al., Appellees.**

**No. 15355.**

Court of Civil Appeals of Texas, San Antonio.

Feb. 19, 1975.

Rehearing Denied March 19, 1975.

Foster, Lewis, Langley, Gardner & Banack, Emerson Banack, Jr., Richard Kerr, San Antonio, for appellants.

Sawtelle, Goode, Davidson & Troilo, Crawford B. Reeder, City Atty., San Antonio, for appellees.

KLINGEMAN, Justice.

Plaintiffs, Royal Crest, Inc. and Forest Glen Utility Company, sought judgment in the District Court of Bexar County, Texas, declaring certain portions of the City of San Antonio Ordinance No. 42018, and the Regulations for Water System Extensions and Service Line Installations (Exhibit C), invalid, null and void; a temporary injunction enjoining appellees from requiring Royal Crest, Inc., to request water service from the City Water Board; and a writ of mandamus compelling appellees to rescind their invalid ordinance and applicable regulation thereto. The trial court, without a jury, declared the ordinance and regulation valid, reasonable and enforceable, and denied the additional relief requested. The trial court made extensive findings of fact and conclusions of law.

Appellant, Royal Crest, Inc., is the owner of a proposed subdivision situated in the extraterritorial jurisdiction of the City of San Antonio (hereinafter referred to as ETJ), and appellant, Forest Glen Utility Company, is a water corporation operating a private water system. On or about May 18, 1973, Royal Crest submitted a master plan and plat for a proposed subdivision known as Mill Brook to the City Water Board for approval pursuant to Article 974a, Vernon's Tex.Rev.Civ.Stat.Ann. (1963).[1] The submission was accompanied by a request that Mill Brook be served by Forest Glen Utility Company. By letter dated May 24, 1973, appellant was notified that the private water service was not feasible and that the City Water Board was exercising its option to provide water services in the ETJ area in question. This was pursuant to Ordinance 42018, which amended Section 36–13(a) of the City Code, and the regulation referred to as Exhibit C, and which permitted the City Water Board to have the first option to provide water services to subdivisions outside the corporate city limits of the City but within its ETJ. Ordinance 42018 will sometimes be hereinafter referred to as the "ordinance" and Exhibit C as the "regulation."[2]

1. Article 974a provides in part that the owner or developer of any proposed subdivision situated within the corporate limits or within five miles of the corporate limits of any city must submit a plat of such proposed subdivision to the city planning commission or governing body for approval; that the county clerk shall not receive or record such plat until it has been approved; that such plat shall not be approved unless it conforms to the general plan of said city and its streets, alleys, parks, playgrounds, and public utility facilities and to the general plan for extension of such city and of its roads, streets and public highways within said city and within five miles of the corporate limits thereof, regard being had for access to and extension of sewer and water mains and the instrumentalities of public utilities.

2. Applicable portions of Ordinance 42018 and Exhibit C may be summarized as follows:

Ordinance 42018, Section A—Water Supply. All subdivisions within the City of San Antonio and its ETJ shall be provided with water supply approved by the State Health Department. Water supplies and distribution systems shall be installed in accordance with the "regulations of water service systems extensions and service line installations" adopted by the Water Works Board of Trustees on March 28, 1973, and on file in the office of the City Clerk, as amended by the provisions of Exhibit C adopted by the Water Works Board of Trustees on March 28, 1973. No water supply and distribution approvements shall be constructed by the subdivider until the plat has been approved by the commission and the plans and specifications have been approved by the Water Board of Trustees of San Antonio.

The pertinent part of Exhibit C is as follows:

Every new subdivision plat received by the Board for a planned development within the City's ETJ will be reviewed by the Board. It will use the factors set forth in paragraph IV below to determine if said subdivision can

On or about May 31, 1973, Royal Crest requested a hearing before the Water Works Board of Trustees, which was held on June 12, 1973. The application for a private water system to serve Mill Brook was denied and the request to have appellees waive their option to furnish water service was declined, and subsequently the plat approval was denied, and the subdivision remains unplatted.

Although appellants assert 28 points of error, such points of error can and will be discussed under three general areas:[3]

I. (a) Is Ordinance 42018 and the regulation (Exhibit C) in violation of and contrary to the Texas Constitution? (b) Is such ordinance and regulation in violation of and contrary to the general laws and statutes of the State of Texas? (c) Is there statutory authorization for such ordinance and regulation?

II. If Ordinance 42018 and the complained of regulation (Exhibit C) can be construed as being within the powers granted to a home rule city by statute or by the Constitution, is it reasonable and does it promote the health, safety and general welfare of the community and its safe, orderly and healthful development?

III. Is the resolution and act of the Water Board in declining to waive its op-

tion to furnish water services to Mill Brook and in refusing to approve appellants' request to have the proposed Mill Brook subdivision served with water by Forest Glen Utility Company supported by substantial evidence?

I.

■ (a) Appellants assert that the ordinance and regulation complained of violates Article 1, Section 26 of the Texas Constitution, Vernon's Ann.St.Const., which provides that monopolies are contrary to the genius of free government and shall never be allowed. There are cases holding that a grant to private parties by a city of an exclusive right to supply the city with water is a monopoly within the meaning of this constitutional provision. This was held in City of Brenham v. Brenham Water Company, 67 Tex. 542, 4 S.W. 143 (1887). The court, however, in discussing the problem pointed out that there are certain classes of exclusive privileges which do not amount to monopolies as are prohibited in the Texas Constitution and said: "It will not do to say that an exclusive right in a municipal corporation to operate water or gas works stands upon the same ground as does such exclusive right held by a private corporation or an individual.

---

be economically served in accordance with the policy of the City Council. The Board shall have the first option to provide water service to any subdivision in the City's ETJ platted after December 26, 1972. It shall make a decision to exercise this option or to decline it promptly or in any event within 30 days after receipt of formal written request for water service for the developer or a single customer. If it is determined that the Board can economically serve the subdivision, the rules in Part IV, 6, 7 and 8 will be followed as applicable. If it is determined that the Board cannot economically serve the subdivision at that time, the subdivider may obtain a water supply from an optional source available to him.

3. Appellants assert in their brief that the issues presented on such appeal may be summarized as follows: (1) Does a home rule city such as San Antonio have the statutory

authority to extend monopoly power it enjoys in connection with providing water service within its corporate limits to the extremes of the ETJ boundaries? (2) Can a home rule city such as San Antonio disenfranchise private water companies effectively operating and competing in the ETJ under the guise of its police power? (3) Even if Ordinance 42018 and the regulation referred to therein could be construed as being within those powers granted to a home rule city by statute or by the Constitution, are they reasonable and do they promote the health, safety and general welfare of the community and its safe, orderly and healthful development? (4) Is the presumption of validity of the ordinance supported by legislative findings, constitutional and statutory authority, and is the reasonableness of the Board's order supported by substantial evidence under the substantial evidence rule?

In the one case the right is, in effect, exercised by the people who are to be affected by it, and not for profit, but for the welfare and convenience of the public and the inhabitants of the corporation. . . . In the one case the exclusive right may create a monopoly, and in the other not."

Appellants acknowledge that the legislature gives home rule cities various powers in connection with water service and does not question that, under Article 1175, Section 11, Tex.Rev.Civ.Stat.Ann. (1963), a home rule city has the exclusive right to provide water service within its corporate limits but asserts that neither this statute or any other statute can be construed as giving appellees the authority to extend their monopoly rights beyond the city limits.

Appellants cite and rely on City of Mason v. West Texas Utilities Company, 150 Tex. 18, 237 S.W.2d 273 (Tex.1951). In *Mason*, the Commissioners Court of Mason County had granted West Texas Utility Company a franchise to operate and maintain its lines and granted it an easement along public roads, etc..for a period of 50 years from 1925. West Texas accepted the terms of the franchise and built its lines in the City of Mason in 1926, which at that time was unincorporated. Mason was incorporated in 1945 and in 1948 constructed its own electric power system. Mason subsequently passed an ordinance requiring West Texas to remove all poles, wires, transformers, etc., used by it in, on, under, across and along the public streets and alleys within the City of Mason and, thereafter, filed a suit for mandatory injunction to compel compliance by West Texas with the ordinance.

Mason was not a home rule city. In 1949, the legislature enacted Article 1436a, which provided that if a street, highway or county road on which electric lines had been built passes through an unincorporated city or town, the corporation owning

such lines shall continue to have the right to maintain and operate its lines within the corporate limits of any city or town for ten years after the date of its incorporation. The trial court entered judgment for the City of Mason. The Court of Civil Appeals reversed and rendered judgment that West Texas had the right to maintain its poles and lines in the City of Mason without the city's consent for a period of ten years after the date of the city's incorporation. The Supreme Court affirmed the Court of Civil Appeals. The Supreme Court, in its opinion, stated that a city which was not a home rule city, but which derives control over its streets from the legislature, could construct its own electrical system and operate it in competition with that of private companies, but that the city was not authorized to create a monopoly by its own act. Four justices dissented and would have reversed the Court of Civil Appeals and affirmed the trial court. We do not regard *Mason* as factually in point or as controlling in the matter before us. The case before us differs from *Mason* in several respects: (1) In *Mason,* a grant from the sovereign existed authorizing the private utility to serve. (2) Mason was not a home rule city. (3) There was in existence a statute, Article 1436a, which conflicted with the ordinance of the City of Mason.

Appellants also cite Texas Power & Light Company v. City of Garland, 431 S. W.2d 511 (Tex.1968). In this case, T.P. &L. sued the City of Garland to enjoin the City from requiring the utility to obtain a permit before it extended its electric lines to a new customer, and from interferring with the company's franchise rights. T.P. &L. was the holder of a franchise which was granted by the City many years prior to the enactment of the ordinance. The trial court permanently enjoined the City from requiring a permit as a condition precedent to the extension of its lines to a new customer; the Court of Civil Appeals reversed, and the Supreme Court affirmed the trial court.

The City of Garland had its own electric plant which was used to provide about 85 percent of the electrical service to City inhabitants. One of the sections of the ordinance authorizes the denial of the permit by reason of competitive interference with the City's electrical services. The Supreme Court said:

"Obviously these provisions have for their purpose the elimination of the Company as a competitor beyond its existing lines. They accord preferments ousting the Company from exercising rights in an area granted by its franchise. These things the City cannot do. Essential franchise rights cannot be taken under pretense of regulation designed to gain competitive advantage to the City acting in its proprietary capacity. The City has no right to barter with the police power. . . . The right to use the present and future streets of the City of Garland cannot now be altered by legislation, unless the ordinance provisions listed above have a reasonable relationship to the protection of the public health, safety, morals or welfare. [These] sections . . . are destructive of the franchise rights rather than regulatory in nature; therefore, they are void."

We do not regard this case as applicable or controlling on the matter before us. T. P.&L. had been granted a franchise by the City itself, while in our case Forest Glen has no vested franchise rights to serve Mill Brook either by grant from the City or any other governmental body. Moreover, the court in *Garland* stressed that the ordinance had no reasonable relationship to the protection of the public health, safety, morals or welfare.

The regulation here complained of does not give the City an exclusive franchise for providing a water service, nor does it give it an exclusive right creating a monopoly. In actuality, it has had no such effect as the record reflects that there are a number of private water companies operating in the ETJ. Under such ordinance, the Water Board is merely given the first option of extending its water service into the ETJ, and if the Water Board does not exercise its option, the subdivider may obtain a water supply from another source. The trial court found that the ordinance and regulation has a reasonable relationship to the protection of the public health, safety and general welfare of the community, and such findings are amply supported by the evidence. The regulation is not destructive of any vested franchise rights and is regulatory in character. The ordinance and regulation is not in violation of the Texas Constitution.

(b) Appellants also assert that the complained of ordinance and regulation is in violation of and contrary to the general laws and statutes of the State of Texas, in particular, Article 1433, Tex.Rev.Civ.Stat. Ann. (1962).[4]

Appellants contend (1) the regulation has the effect of disenfranchising Forest Glen from the right to operate in the ETJ; (2) Mill Brook is a village within the meaning of Article 1433; (3) the regulation complained of (Exhibit C) was promulgated for the sole purpose of eliminat-

4. Article 1433 provides in part as follows: "Any water corporation shall have the power to sell and furnish such quantities of water as may be required by the city, town or village *where located* for public or private buildings or for other purposes; and such corporation shall have the power to lay pipes, mains and conductors for conducting water through the streets, alleys, lanes and squares of any such city, town or village, *with the consent of the governing body thereof, and under such regu-* *lations as it may prescribe.* Such corporation is further authorized to lay its pipes, mains and conductors and other fixtures for conducting water through, under, along, across and over all public roads, streets and waters lying and situated outside the territorial limits of any such city, town or village in such manner as not to incommode the public in the use of such roads, streets, and waters." (Emphasis added)

ing private water companies as competitors in the ETJ.

In answer thereto, appellees assert (1) that the trial court correctly held that the private water company had no statutory franchise to lay its mains in public streets and roads within the ETJ of the city, town or village; (2) the trial court correctly held that the proposed subdivision, known as Mill Brook, is not a city, town or village as encompassed in Article 1433; (3) Forest Glen does not hold a franchise to sell water or use the public streets and roads in Bexar County from any governmental agency.

Under Article 1433, Forest Glen holds a corporate charter which allows it to sell water to a city, town or village provided it has the consent of the governing body thereof. As it presently exists, Mill Brook has no inhabitants, no streets, no roads, no utilities and no governing body. Forest Glen Utility Company is not situated within the confines of the proposed subdivision and is neither contiguous or adjacent to it.

■ The statute does not define a town or village and the court must look to the ordinary signification or meaning for definition thereof. In an early case, State ex rel. Taylor v. Eidson, 76 Tex. 302, 13 S.W. 263 (1890), the Supreme Court said: "No definition of the word 'town' is given, and it follows that we must take the word on its ordinary signification,—a collection of inhabited houses." A town or village is an assemblage of habitations. There should be some degree of unity and proximity between the habitations so assembled to constitute a town or village. The word village means an assembly of houses. It must be a village in fact, with a reasonable compact center or nucleas of population and not a mere agricultural community. Harang v. State ex rel. City of West Columbia, 466 S.W.2d 8 (Tex.Civ.App.—Houston [14th Dist.] 1971, no writ). See also Ewing v. State, 29 Tex.App. 434, 16 S.W. 872 (Tex.1891); Rogers v. Raines, 512 S.W.2d 725 (Tex.Civ.App.—Tyler 1974, no writ); 87 C.J.S. Towns Section 2, p. 7.

■ We have no argument with appellants' contention that, under Article 1433, water corporations have the power to sell and furnish water to cities, towns and villages with certain rights to lay pipes and mains.[5] However, such statute does not give such water corporations an automatic franchise to sell such water and lay mains, without limitations. Such water corporations must have the consent and approval of the governing body of the city, town or village and under such regulations as it may prescribe.

■ The record does not reflect that any type of permit or consent has been obtained by the utility company or the developers of such subdivision from any governing body. It is also clear from the record that Forest Glen Utility Company is not situated within the territorial limits of such proposed subdivision or contiguous thereto. Under the record, Article 1433 forms no basis for complaint by either Forest Glen or Royal Crest.

In our opinion, the complained of ordinance and regulation is not in violation of or contrary to Article 1433, or to any general laws or statutes of the State of Texas.

(c) Appellants also assert such ordinance and regulation is not authorized by statutory authorization. It is apparently appellants' contention that in order for the city to create its "first option" provision, it

5. Appellee urges that in order for such water corporations to have such powers, it must be located within the territorial limits of said city, town or village. Since the statute provides that any water corporation will have the power to sell and furnish water that may be required by the city, town or village (*where located*), they assert that a newly platted subdivision as Mill Brook cannot qualify as an existing village, with a governing body authorized to give consent to and contract with a private water company; that in any event, Forest Glen is not situated within the territorial limits of said proposed subdivision.

must have express authority from the legislature.

■ It should be remembered that the City of San Antonio is a home rule city, under the Home Rule Amendment to the Texas Constitution, Article 11, Section 5. A city which operates under the Home Rule Amendment is empowered to adopt and amend its charter in any manner which it may desire, consistent with and in accordance with the State Constitution and the general laws of the State. Forwood v. City of Taylor, 147 Tex. 161, 214 S.W.2d 282 (1948); Davis v. City of Taylor, 123 Tex. 39, 67 S.W.2d 1033 (1934); City of Denton v. Denton Home Ice Company, 119 Tex. 193, 27 S.W.2d 119 (1930). See also Texas Constitution, Article 11, Section 5; Article 1165, Tex.Rev.Civ.Stat.Ann. (1963). As a home rule city then San Antonio is not required to look to the legislature for a grant of power to act but only to ascertain if the legislature has placed any limitations on the city's constitutional power. State ex rel. Rose v. City of La Porte, 386 S.W.2d 782 (Tex.1965);[6] Forwood v. City of Taylor, *supra*; City of El Paso v. State ex rel. Town of Ascarate, 209 S.W.2d 989 (Tex.Civ.App.—El Paso 1947, writ ref'd); Yellow Cab Transit Company v. Tuck, 115 S.W.2d 455 (Tex. Civ.App.—Dallas 1938, writ ref'd). See Burch v. City of San Antonio, Tex., 518 S.W.2d 540 (1975).

■ In the absence of constitutional and statutory limitations, such power and authority may be derived from the city charter, if such charter provisions are not in violation of or prohibited by the Constitution or the general laws of the State. Under the City Charter of the City of San Antonio, there was ample authority to enact the complained of ordinance and regulation, and such authority is not in violation of or prohibited by the Constitution or the general laws of the State of Texas.

Moreover, appellees say that its authority to enact and enforce the ordinance and regulation is amply supported by statutory authorization and they cite numerous statutes, including Articles 969b, 970a, 974a, 1108, 1109, 1109a, 1109b, 1115, 1116 and 1175, Tex.Rev.Civ.Stat.Ann. (1963).

Under Article 1175, Section 11, a home rule city has the exclusive right to provide water within its corporate limits and such statute grants home rule cities broad powers in connection with such operation, including the power to buy and construct a public utility system within or without its city limits, and the power of eminent domain.

Under Article 1108, Section 3, a city may extend its water system beyond the corporate limits under such terms and conditions as may appear to be to the best interests of the city.

Article 970a establishes what is known as the ETJ. Under such statute, the governing body of such city may extend by ordinance to the ETJ the application of its city ordinance establishing rules and regulations governing the subdivision of land. Under Section 8(A), no city can be incorporated within the ETJ of the city without the city's permission. Section 8(B) grants the city the first option to furnish water in the ETJ when an attempt is made to create a political subdivision such as a water control improvement district and provides that no political subdivision having as one of its purposes the supplying of fresh water may be created in the ETJ of any city without written consent of such city.

Article 974a has been heretofore set out in some detail under footnote number one, but, in effect, it gives home rule cities the power to regulate structurally the ETJ. It

6. "The governing body of a city is not required to look to the Legislature for a grant of power to act. Such power is given by the Constitution. The governing body only looks to acts of the Legislature to ascertain if it has placed any limitations on the power to act as granted by Article XI, Section 5." 386 S.W.2d at 785

authorizes a municipality to either extend its own or authorizes the extension of sewer and water mains other than its own into the ETJ at its option in the exercises of governmental discretion. It does not prohibit the city from having the option to make that determination in favor of its own utilities.

The trial court did not err in holding that the City of San Antonio is not prohibited under the general laws or any statute of this State to enact and enforce the complained of ordinance and regulation. Moreover, under the statutes hereinbefore discussed, the city had sufficient legislative authority to enact and enforce such ordinance and regulation.

## II.

Appellants contend that the ordinance and regulation bear no reasonable relationship to the health, safety and general welfare, and that the real purpose is to eliminate competition. On the other hand, appellees assert that (a) the ordinance and regulation is reasonable and promotes the health, safety and welfare of the community and the safe, orderly and healthful development of the City of San Antonio and its ETJ; (b) appellants failed to meet their burden of proof that the ordinance and regulation are unreasonable, arbitrary or capricious; (c) and that the plat of Mill Brook subdivision and its water utility layout does not conform to the general plan of the City of San Antonio and its ETJ.

Various applicable statutes have been discussed in some detail heretofore.[7] The trial court made numerous findings of fact and conclusions of law which are pertinent to the question of whether such ordinance and regulation is reasonable and whether it promotes the health, safety and general welfare of the community, some of which findings are summarized as follows:

(a) Ordinance 42018 was adopted pursuant and in accordance with the adopted general plan of the city and its public utility facilities in order to promote the health, safety and general welfare of the community and to promote the safe, orderly and healthful development of the city.

(b) The general plan for the extension of the water utility system of the city into proposed subdivisions in the ETJ was based upon extensive study of the needs and requirements of the present and future residents of the city's ETJ for water utility services and for supplemental surface water supply.

(c) The plat of the proposed subdivision of which its water utilities layout is a part does not conform to the general rules and regulations of the city governing plats and subdivisions of lands within the ETJ, which regulations the city council adopted to promote the health, safety and general welfare of the community.

(d) The city and the inhabitants of the ETJ will need a surface water supply by the year 1990.

7. In this connection, it is to be remembered that Article 974a sets up certain necessary requirements requisite to the approval of a plat of a subdivision of land within the ETJ. (a) It must conform to the general plan of the city and its streets, alleys, parks, playgrounds and public utility facilities of the city and to the general plan for extension of such city and of its roads, streets, and public highways within said city and within five miles of the corporate limits thereto, regard being had for access to and extension of sewer and water mains and the instrumentalities of public utilities. (b) It must conform to the general rules and regulations that the governmental body of the city may promulgate to promote the health, safety, morals, or general welfare of the community and the safe, orderly and healthful development of said community.

Article 970a (Municipal Annexation Act), which created the ETJ, states that its purpose is to promote the general health, safety and welfare of the persons residing within and adjacent to the cities of this State.

Article 1175 gives the city certain police powers, including the power to protect the pollution of any stream, drain, or tributaries thereof which may constitute the source of water supply of any city and to provide for policing of same.

(e) The only present supply of water for the city and its ETJ is the Edwards Underground Water Reservoir.

(f) The Edwards Reservoir underlying the City of San Antonio and its ETJ contains six distinct well zones, some of which are potentially bad water zones.

(g) Absent the requirement as a condition of plat approval that a proposed subdivision in the ETJ be served by the City's water system, every such subdivision can be served by a privately owned water supply company, who may drill wells indiscriminately into any of the well zones in the Edwards Reservoir.

(h) Wells drilled in some of these zones are subject to pollution and, in some instances, the water from such wells falls below minimum standards set by the State.

(i) It is the policy of the City Water Board to drill wells only in the safe water zones.

(j) The projected population of the ETJ in 1995 is 365,000.

(k) The city could service such projected population by the drilling of only 30 additional wells, whereas private companies would require 615 wells.

(l) Wells drilled by the city would not be drilled in the bad or dangerous zones.

(m) The requirement that subdivisions in the ETJ be served by the city water system will reduce the risk of the impairment of the quality of the water as well as the quantity and promote the general health, safety and welfare of the city and its ETJ.

(n) Such requirement will promote the health, safety and general welfare in the ETJ by providing a necessary supplemental surface water supply.

(o) It will promote the health and general welfare by providing a water supply for half the present charge of private water companies.

(p) It is the imperative public necessity that the city have the first option of supplying water in order to promote the health safety and general welfare of the city in its ETJ.

(q) Ordinance 42018 and the regulation promulgated thereunder as Exhibit C are reasonable and a legal exercise of the city's legislative discretion and governmental power.

(r) Appellants failed to meet the burden of proof that the ordinance and regulation and the actions of appellees pursuant thereto are unreasonable, arbitrary or capricious.

A number of witnesses testified as to the composition of the Edwards Reservoir and the possibilities of pollution of such reservoir. There is testimony that in wells drilled near the bad water line or in certain other zones that there is a possibility of pollution, particularly in times of drought when the water level drops, and that wells drilled into such zones are threats to the quality and quantity of water to people who live or will live in such ETJ. There is testimony that, in the near future, the City of San Antonio and adjacent areas will need a surface water supply because the supply available from the Edwards Reservoir is limited. There is testimony that such a water supply can be furnished at less cost by the city and that the cost to the individuals involved will be more reasonable. There is testimony that the city can install mains at a cost of $87.-77 per lot in the Mill Brook subdivision but that it would cost Forest Glen Utilities $250.00 per lot.

There is testimony that based on present ratio of wells to customers in the city's system that it would take only 30 wells to supply the projected need of the population of the ETJ in the year 1995; and that, based upon the ratio of wells to customers

for water purveyors other than the City of San Antonio, it would take 615 wells to service them. There is evidence that the more wells that are drilled into the reservoir, the greater the hazard of pollution, particularly where wells are drilled indiscriminately into the various zones. There is testimony that it is the policy of the City Water Board to drill wells only in the safe zones.

 There is a presumption in favor of the validity of a municipal ordinance, and the burden of showing that it is invalid is upon the party attacking it; and unless such showing is clearly made, the action of the City Council in enacting the ordinance is conclusive and cannot be reviewed by the court. City of Abilene v. Woodlock, 282 S.W.2d 736 (Tex.Civ.App. —Eastland 1955, writ ref'd), cert. denied, 351 U.S. 925, 76 S.Ct. 782, 100 L.Ed. 1455 (1956); Bexar County v. City of San Antonio, 352 S.W.2d 905 (Tex.Civ.App.—San Antonio 1961, writ dism'd). The action of a governing body of a city in passing an ordinance is final and conclusive and can-

not be reviewed by the courts, unless it is clearly made to appear that their act was arbitrary, unreasonable and a clear abuse of power. Town of Ascarate v. Villalobos, 148 Tex. 254, 223 S.W.2d 945 (1949).

Appellants failed to meet their burden of proof that the ordinance and regulation is unreasonable, arbitrary or capricious.

### III.

The trial court, in its final judgment, found that the resolution and act of the Water Works Board of Trustees refusing to approve appellants' request to have the proposed Mill Brook subdivision served with water by Forest Glen was lawful, authorized by ordinance and supported by substantial evidence.[8]

 The applicable rules pertaining to judicial review of administrative decision are fully set forth in Board of Firemen's Relief and Retirement Fund Trustees of Houston v. Marks, 150 Tex. 433, 242 S.W. 2d 181 (1951). The courts have consistently held that the findings of an adminis-

---

8. The Water Board, in declining to waive its option to furnish water service to Mill Brook and in refusing to approve appellants' request to have the proposed Mill Brook subdivision served with water by Forest Glen, made extensive administrative findings, the pertinent parts of which may be summarized as follows:

(a) The property to be subdivided is within the ETJ of the city.

(b) Ordinance 42018 establishes rules applicable to the installation of water supply and distribution systems within the city and the ETJ.

(c) Forest Glen is a private utility company and draws its sole water supply from the Edwards Reservoir which is the sole water supply of the city.

(d) In the near future, metropolitan San Antonio will need a surface water supply to supplement its supply of water from the Edwards Reservoir.

(e) The city is the only user of the Edwards Reservoir with sufficient resources to furnish such surface water supply.

(f) Failure to provide a surface water supply will threaten the health, safety and general welfare of the community and its safe, orderly and healthful development of the community.

(g) The city can provide the broadest possible customer base with the greatest possible equitable spread of the cost to finance the acquisition of further surface water supply.

(h) The proliferation of private water companies within the city and the ETJ presents a hazard to the quality of the water in the Edwards Reservoir.

(i) Ownership and control by the city to the greatest extent possible to the distribution system within the city and its ETJ will provide a means of protecting the quality of the water of the reservoir.

(j) It is economically feasible for the city's water system to serve Mill Brook subdivision.

(k) It is not in the interest of the health, safety and general welfare of the community and the safe, orderly and healthful development of the community to permit Mill Brook to be served by Forest Glen.

(l) It is in the interest of the health, safety and general welfare of the community and the safe, orderly and healthful development of the community to control the water supply system within the city limits and to require the extension of the city water system within the ETJ.

trative tribunal will be sustained by the court if it is reasonably supported by substantial evidence, which question must be determined by the courts from a consideration of the entire record in the case as that record has been made in the trial court. Board of Firemen's Relief and Retirement Fund Trustees of Houston v. Marks, *supra*; Hawkins v. Texas Company, 146 Tex. 511, 209 S.W.2d 338 (1948); Trapp v. Shell Oil Company, 145 Tex. 323, 198 S.W.2d 424 (1946); Railroad Commission v. Shell Oil Company, 139 Tex. 66, 161 S.W.2d 1022 (1942).

We have carefully considered the entire record as that record has been made in the trial court. Under the applicable rules hereinbefore set forth, the trial court did not err in holding that there was substantial evidence to support the complained of order of the Water Board.

We have concluded that: (a) the complained of ordinance and regulation is not in violation of the Texas Constitution or the general laws of the State of Texas; (b) the ordinance and regulation is not prohibited by any law or statute of the State of Texas; (c) there is legislative and statutory authority for the enactment of such ordinance and regulation; (d) the ordinance and regulation is reasonable and promotes the health, safety and general welfare of the community and its safe, orderly and healthful development; (e) the trial court's material findings of fact are sufficiently supported by the evidence; (f) the resolution and act of the Water Board in refusing to approve appellant's request to have the proposed Mill Brook subdivision served with water by Forest Glen is supported by substantial evidence; (g) appellants failed to meet their burden of proof to show that the ordinance and regulation and the action of appellees pursuant thereto are unreasonable, arbitrary or capricious.

All of appellants' points of error have been considered, and all are overruled. The judgment of the trial court is affirmed.