John S. McCONNELL, Appellant,

v.

ALAMO HEIGHTS INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 16002.

Court of Civil Appeals of Texas, San Antonio.

Dec. 29, 1978.

Rehearing Denied Jan. 24, 1979.

Craig L. Austin, San Antonio, for appellant.

George H. Spencer, Randolph P. Tower, Clemens, Spencer, Welmaker & Finck, San Antonio, for appellee.

## OPINION

KLINGEMAN, Justice.

This is a teacher termination case. Appellant John S. McConnell brought suit in the district court of Bexar County, Texas, seeking a temporary restraining order, temporary injunction and permanent injunction requiring his reinstatement as a teacher, back pay, and attorney's fees. Both the temporary restraining order and the temporary injunction were denied after hearing. Appellant subsequently filed a motion for summary judgment which was also denied by the trial court. In a subsequent hearing the trial court, after a non-jury trial, granted appellant judgment for back pay, attorney's fees and costs for the period of appellant's suspension as a teacher from January 25, 1977, through February 8, 1977, but found that appellant was lawfully terminated by appellee, Alamo Heights Independent School District, on February 8, 1977, and denied all other relief sought by appellant, including reinstatement, back pay, attorney's fees, and costs, for the period since February 8, 1977. Appellant will sometime hereinafter be referred to as "McConnell" and appellee as "School District."

Appellant asserts seven points of error which cover the following general areas: (a) alleged violations of the Texas Open Meetings Act; (b) alleged violations of the Texas Education Code; (c) lack of proper notice; (d) denial of a jury trial; (e) application of the substantial evidence rule; and (f) alleged violations by the School District of its own rules in terminating the teacher.

McConnell was employed by the School District as a probationary teacher in September, 1972, and at that time taught vocational subjects in the high school. The School District has adopted the "continuing contract law" under the Texas Education

Code, and in August, 1975, at the end of a probationary teaching period, entered into a continuing contract with McConnell, who then began teaching high school English courses. In late 1975 or early 1976 McConnell was transferred from the high school to junior school and in August, 1976, he assumed duties as a teacher of English in junior school. Apparently McConnell and the school principals had some policy differences. Both the principal and the assistant principal contend that McConnell was making excessive student disciplinary referrals to the principal's office, and noted that during the period from August, 1976, to approximately October 1, 1976, McConnell was responsible for ninety-one student referrals to the assistant principal's office for disciplinary reasons. The next highest number of disciplinary referrals from another teacher for the same period was twenty-seven. The matter of excessive referrals was discussed with McConnell by the principal and the assistant principal, and a letter was sent to him suggesting remedial actions. The problem continued, however, and according to the records of the assistant principal, as of January 24, 1977, McConnell had referred 147 student disciplinary problems to his office while the next highest teacher made only forty-three such referrals. One of the counselors observed and recorded problems and complaints relating to McConnell's handling of student discipline during this period, and there were other complaints from students, parents and other staff members.

Another problem arose with regard to McConnell's teaching of English. The principal received student, parent and faculty complaints about appellant's failure to teach English in accordance with the prescribed curriculum. McConnell was counseled on numerous occasions by the principal, assistant principal, counselor, and other personnel concerning the teaching of spelling and grammar from the State- and School District-approved textbooks, and a letter concerning his deficiencies in these areas of the curriculum was sent to him. On a number of occasions the principal or assistant principal visited McConnell's classes and wrote critical reports.

In addition, the principal received complaints from parents relating to appellant's deficiencies in grading of assignments completed in his classes. The principal examined McConnell's grade book and found it to be incomprehensible, and incomplete in comparison with the grade books of other teachers at the junior school.

On January 24, 1977, the junior school principal wrote McConnell that he was recommending to the superintendent of the School District that McConnell be terminated for reasons set forth in the letter. The reasons for such recommendation included (a) failure to comply with specific requests and directives regarding curriculum; (b) failure to maintain routine classroom management and discipline; (c) continual problems with students, teachers, parents, counselors and administrators concerning his attitude and methods. On January 25, 1977, an emergency meeting of the Board of Trustees was called, at which time the superintendent of schools recommended the immediate suspension of McConnell without pay based on the reasons stated in the principal's letter. The superintendent's recommendation in this regard was reduced to writing in the Board's minutes of said emergency meeting. On the same day, the vice-president of the Board wrote McConnell of his suspension and notified him that the Board would conduct a hearing at its next regular meeting to consider the recommendations of the superintendent to terminate appellant's contract immediately for reasons which were set forth in the letter and which have been summarized heretofore. McConnell, acting through counsel, requested a hearing before the Board on February 8, 1977. At such meeting McConnell appeared with his counsel and actively participated in such hearing.

Some of appellant's points of error overlap to some extent and we will discuss all points of error under areas hereinafter set forth.

### Notice

Appellant asserts that the Board's action in terminating him was void because of

alleged violations of the Texas Open Meetings Act. Tex.Rev.Civ.Stat.Ann. art. 6252–17 (Vernon Supp.1978–1979). In particular, he urges that (1) the County Clerk did not receive or post notice of the meeting until 26 hours after it occurred; (2) no notice by telephone or telegraph was given to any news media; and (3) the subject of such meeting is not disclosed in the notice.

These allegations apparently refer to the emergency meeting of January 25, 1977, which resulted in action suspending McConnell and notifying him of the Board's proposed action to terminate his employment at a subsequent meeting of the Board in February. The January 25, 1977, meeting was held at 8:00 a. m., and one of appellant's exhibits shows that the notice sent to the County Clerk was not received until January 26, 1977, at 10:22 a. m. Appellant also asserts that no notice of such meeting was given to the news media. As to the subject matter of this meeting, the agenda shown on an exhibit consists of the following recitations:

AGENDA

A. Call meeting to order
B. EXECUTIVE SESSION
  1. Personnel
C. Adjourn

We agree with appellee's contention that such alleged violations are not fatal and do not render the subsequent termination void. McConnell's termination did not occur until the Board meeting of February 8, 1977, at which meeting appellant and his counsel both appeared and participated.

The statute regarding the notice to the County Clerk imposes no requirement, such as that alleged by appellant, since the meeting of January 25, 1977, was an emergency session. The pertinent section of the statute provides that in the event of an emergency meeting it shall be sufficient if the notice or supplemental notice is posted two hours before the meeting is convened. Tex. Rev.Civ.Stat.Ann. art. 6252–17, § 3A(h) (Vernon Supp.1978–1979). The Act makes no mention whatsoever of providing a copy

of such notice of an emergency meeting to the County Clerk.

While no notice of the emergency meeting was given to the news media, the applicable statutory provision requires the giving of such notice if request therefor has been previously filed at the headquarters of the governmental body, and then only if the media requesting such notice consents to pay any and all expenses incurred by the governmental body in providing such special notice. Id. § 3A(e) (Vernon Supp.1978–1979). It is undisputed that no request for such notice was received from the news media.

With regard to notice of the subject matter of the emergency meeting, the notice which the School District posted merely described the purpose as relating to "Personnel," and the session did deal with personnel matters. The Education Code does not require that specific notice of such an emergency meeting be given the teacher involved. The law appears settled that the notice provisions of the Texas Open Meetings Act are subject to the substantial compliance rule. Burton v. Ferrill, 531 S.W.2d 197 (Tex.Civ.App.—Eastland 1975, writ dism'd); Stelzer v. Huddleston, 526 S.W.2d 710 (Tex.Civ.App.—Tyler 1975, writ dism'd).

This court in Santos v. Guerra, 570 S.W.2d 437 (Tex.Civ.App.—San Antonio 1978, writ ref'd n. r. e.), has recently passed on the matter of notice under the Texas Open Meetings Act. The case involved the validity of the action of the Webb County Commissioners Court in discharging an employee. The jury found that there was a failure to post notice of the commissioners court meeting as required by the Texas Open Meetings Act, and judgment was entered on the jury verdict in favor of the employee. On appeal, this court held that the substantial compliance rule was applicable, and that under the facts of such case substantial compliance with the Open Meetings Act was established as a matter of law.

We are of the opinion that there was substantial compliance with the provisions of the Texas Open Meetings Act in

regard to the meeting of January 25, 1977. Moreover, that meeting resulted only in McConnell's suspension, and the judgment now before us awards McConnell full pay and attorney's fees for the period between his suspension and his ultimate termination. As a result of that meeting, McConnell was notified of the proposed action to dismiss him and of his right to request a hearing regarding such proposed action. McConnell through his counsel requested such hearing which was held on February 8, 1977, at which time he and his counsel appeared and participated in proceedings which culminated in the Board's action to terminate appellant's employment with the School District. We are of the opinion in view of the events above set forth, that any discrepancy in the notice as to the emergency meeting, if there was any, is immaterial.

### Applicability of the Substantial Evidence Rule

Two of the appellant's points of error basically involve the applicability of the substantial evidence rule. By such points of error appellant asserts that if the action of the Board in dismissing the teacher is reviewable under the substantial evidence rule, there is a want of substantial evidence to support the dismissal; and that the teacher was improperly denied a trial by jury.

■ Appellant contends that a rule of strict compliance should apply rather than the substantial evidence rule. We do not agree. It is well settled that an appeal to a court from a hearing before the board of trustees of a school district is governed by the substantial evidence rule. *Ferguson v. Thomas,* 430 F.2d 852 (5th Cir. 1970); *Gerst v. Nixon,* 411 S.W.2d 350 (Tex.1966); *Cruz v. City of San Antonio,* 424 S.W.2d 45 (Tex. Civ.App.—San Antonio 1968), *aff'd,* 440 S.W.2d 924 (Tex.1969); *Rock Island Independent School District No. 907 v. County Board of School Trustees of Colorado County,* 423 S.W.2d 665 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n. r. e.); 51 Tex.Jur.2d *Schools* § 88 (1970). *See also Simard v. Board of Education of Town of*

*Groton,* 473 F.2d 988 (2d Cir. 1973); *Conley v. Board of Education of the City of New Britain,* 143 Conn. 488, 123 A.2d 747 (Conn. 1956); *Mims v. West Baton Rouge Parish School Board,* 315 So.2d 349 (La.App.1975). In *Gerst v. Nixon,* the Supreme Court of Texas by analogy found that:

[T]he order of a regulatory body, namely, the Railroad Commission, was likened to that of a commissioners' court or a *board of school trustees* and it was held that the issue was not whether the regulatory agency came to the proper fact conclusion on the basis of conflicting evidence, but 'whether or not it acted arbitrarily and without regard to the facts'.

411 S.W.2d 350, 354 (Tex.1966), *citing Railroad Commission v. Shell Oil Co.,* 139 Tex. 66, 161 S.W.2d 1022 (1942) (emphasis added).

■ The substantial evidence rule is set forth in *Rock Island Independent School District No. 907 v. County Board of School Trustees of Colorado County,* 423 S.W.2d 665 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n. r. e.), as follows:

In a trial under the substantial evidence rule, on appeal to the district court from an order of an administrative agency, the proceeding is not a trial de novo. The plaintiff has the burden of proving the absence of substantial evidence, that is, the burden of proving that the action of the . . . board was illegal, arbitrary, capricious, unreasonable or discriminatory. It is the evidence adduced in the trial court, not in the hearing, if any, conducted by the administrative agency, which is determinative of the issue of substantial evidence. The issue of substantial evidence is one of law to be answered by the court—not a question of fact to be answered by the jury. Under the substantial evidence rule, the administrative order in question will be upheld if, considering the entire record in the trial court, that order finds reasonable support in the evidence.

*Id.* at 669. The courts have consistently held that the findings of an administrative tribunal will be sustained by the court if it

is reasonably supported by substantial evidence, which question must be determined by the court from a consideration of the entire record of the case as that record has been made in the trial court. *Board of Firemen's Relief & Retirement Fund Trustees of Houston v. Marks,* 150 Tex. 433, 242 S.W.2d 181 (1951); *Hawkins v. Texas Co.,* 146 Tex. 511, 209 S.W.2d 338 (1948); *Trapp v. Shell Oil Co.,* 145 Tex. 323, 198 S.W.2d 424 (1946); *Railroad Commission v. Shell Oil Co.,* 139 Tex. 66, 161 S.W.2d 1022 (1942); *Royal Crest, Inc., v. City of San Antonio,* 520 S.W.2d 858 (Tex.Civ.App.—San Antonio 1975, writ ref'd n. r. e.).

■ As hereinbefore discussed, appellant's termination was recommended on grounds of failure to comply with official directives and established school board policy; failure to maintain routine classroom management and discipline; and constant problems with students, teachers, parents, counselors and other administrative personnel, as to attitudes and methods.

We have generally set forth the applicable factual background, which is summarized immediately hereinafter. In the area of classroom management and discipline, there is evidence that in a period of less than three months appellant made ninety-one student referrals to the principal's office for disciplinary reasons, greatly in excess of the next highest number of twenty-seven referrals by another teacher during the same period of time. As of January 24, 1977, McConnell had referred 147 disciplinary problems to the office of the principal while the next highest teacher had referred only forty-three such incidents. Other administrative and teaching personnel had recorded complaints regarding McConnell's handling of student discipline. It could reasonably be concluded by the Board from such complaints that McConnell was having disciplinary problems either from lack of ability to handle his students, or due to some dereliction of his duty. Regarding appellant's failure to comply with official directives and established school board policy, there was testimony that the junior high school principal received student, parent, and teacher complaints relating to McCon-

nell's failure to teach English in accordance with the prescribed curriculum. There was further testimony with regard to deficiencies in grading of school work completed in McConnell's classes.

We hold that there is substantial evidence that McConnell's termination was in conformity with the provisions of the Texas Education Code. While there is some conflicting evidence in the record before us, it cannot be concluded therefrom that the Board's action was arbitrary, capricious, or without regard to the facts. Appellant has not sustained his burden of showing that the order appealed from was not supported by substantial evidence.

■ Appellant's point of error that he was entitled to jury trial is also without merit. We have already held that this is a case governed by the substantial evidence rule. This court in *Cruz v. City of San Antonio* held

> In a trial under the substantial evidence rule the issue is whether the evidence *introduced before the trial court* shows facts in existence as of the time the order was entered, of such a substantial nature as to reasonably support the order. This issue is one of law and trial of the fact issues by a judge or jury is avoided. *Firemen's & Policemen's Civil Service Commission v. Hamman,* 404 S.W.2d 308 (Tex.Sup.1966); *Southern Canal Co. v. State Board of Water Engineers,* 159 Tex. 227, 318 S.W.2d 619 (1958); *Jones v. Marsh,* 148 Tex. 362, 224 S.W.2d 198 (1949).

424 S.W.2d 45, 47 (emphasis original). In *City of San Antonio v. Texas Water Commission,* 407 S.W.2d 752 (Tex.1966), the Supreme Court of Texas stated:

> Under the substantial evidence rule the issue to be decided and on which evidence is to be heard is the *reasonableness* of the Commission's order; this is a question of law and an appellate court cannot render its decision based upon facts found by [the] trial court because the legal test of the *reasonableness* of an order of the Commission is whether it is reasonably

supported by substantial evidence and not whether it is supported by a preponderance of the evidence. Furthermore, trial of fact issues by a judge or jury is avoided; it is the Commission's fact finding that is before the trial and appellate courts. (Citations omitted).

*Id.* at 756 (emphasis original).

### Texas Education Code

Two of appellant's points of error pertain to alleged violations of the Texas Education Code. By such points he asserts that the written recommendation for termination which was reviewed by the Board was not in compliance with the Texas Education Code because it was not the superintendent's recommendation; and that the causes for discharge alleged by the Board are legally inoperative to state either "repeated failure to comply with official directives" or "repeated and conti[nual] neglect of duties."

■ In support of such points, appellant asserts that the recommendation for termination relied on by the Board was not that of the superintendent, but rather that of a principal, in violation of Section 13.111(b) of the Texas Education Code. This section provides that any proposed action to terminate a teacher for inability or failure to perform assigned duties shall be based upon written recommendation by the superintendent of schools, filed with the board of trustees. Tex.Educ.Code Ann. § 13.111(b) (Vernon 1972). Here, the principal of the school involved drafted a letter recommending appellant's immediate suspension and ultimate termination. A copy of this letter was given to the superintendent who scheduled an emergency Board meeting for the morning of January 25, 1977, to consider such recommendation. At this meeting, the superintendent read the letter to the Board and added his concurrence thereto. This was reduced to writing in the minutes of said meeting and filed with the Board of Trustees.

We hold that the School District substantially complied with section 13.111(b) of the Texas Education Code by the superintendent's reading of the principal's recommendation to the Board; by giving his concurrence thereto; and by the filing of such written recommendation in the transcribed minutes of the Board meeting. Appellant was immediately informed in writing of the proposed termination of his employment. The letter set forth in full the grounds for such proposed termination. It is to be remembered that appellant and his counsel appeared at the meeting of February 8, 1977, which resulted in his ultimate termination.

■ The grounds assigned for appellant's termination fall squarely into either subsection 4 or subsection 6 of the provisions of Section 13.109 of the Texas Education Code, set out as follows:

Any teacher, whether employed under a probationary contract or a continuing contract, may be discharged during the school year for one or more of the following reasons, which shall constitute lawful cause for discharge:

(1) immorality;

(2) conviction of any felony or other crime involving moral turpitude;

(3) drunkenness;

(4) *repeated failure to comply with official directives and established school board policy;*

(5) physical or mental incapacity preventing performance of the contract of employment; and

(6) *repeated and continuing neglect of duties.*

Tex.Educ.Code Ann. § 13.109 (Vernon 1972) (emphasis added).

We hold that there has been substantial compliance with the applicable provisions of the Texas Education Code. The School Board's charges were adequate and gave sufficient notice to appellant of the nature of the charges.

Although we have held that there is substantial compliance with the procedural and notice provisions of the Texas Education Code, there is also respectable authority from other jurisdictions that where a teacher participates in the hearing for his dis-

missal he waives any purported insufficiencies or defects in the notice. *Dugan v. Bollman,* 31 Colo.App. 261, 502 P.2d 1131 (1972); *Board of Public Education in Wilmington v. Delaney,* 52 Del. 213, 155 A.2d 51 (1959); *Van Peursem v. Consolidated Independent School District of Laurens,* 240 Iowa 1100, 38 N.W.2d 615 (1949); *Million v. Board of Education of Wichita,* 181 Kan. 230, 310 P.2d 917 (1957); *Alexander v. School District No. 17 of Thurston County,* 197 Neb. 251, 248 N.W.2d 335 (1976); 68 Am.Jur.2d *Schools* § 188 (1973); 78 C.J.S. *Schools and School Districts* § 204 (1952).

█ By one point of error appellant contends that in discharging McConnell the district violated or refused to follow its own regulations pertaining to academic freedom, discipline, and teacher evaluation. We find no merit in this point of error. Appellant's testimony that his method of teaching was better than the prescribed curriculum and that the administrative directives and Board's holding violated academic freedom and freedom to teach, does not overcome the ample testimony in the record of appellant's repeated failures to comply with official directives and failure to maintain classroom management and discipline. The record before us does not substantiate appellant's claim that the School District failed to adhere to its policies of academic freedom, discipline, teacher evaluation and authority of the school principal.

We have carefully considered the entire record as that record has been made in the trial court. Under the applicable rules hereinbefore set forth, the trial court did not err in holding there was substantial evidence to support the Board's order which resulted in appellant's termination of employment with the School District.

All of appellant's points of error have been considered and all are overruled.

The judgment of the trial court is affirmed.