The BOARD OF TRUSTEES OF the
AUSTIN INDEPENDENT SCHOOL
DISTRICT, Appellant,

v.

COX ENTERPRISES, INC. d/b/a The
Austin American Statesman, Appellee.

No. 9181.

Court of Appeals of Texas,
Texarkana.

Aug. 21, 1984.

Rehearing Denied Sept. 18, 1984.

S. Jack Balagia, Jr., William H. Bingham, McGinnis, Lochridge & Kilgore, Austin, for appellant.

David H. Donaldson, Jr., R. James George, Jr., Graves, Dougherty, Hearon & Moody, Austin, for appellee.

CORNELIUS, Chief Justice.

The Austin School District Board of Trustees (district), appeals from a declaratory judgment rendered in this suit brought by Cox Enterprises, doing business as The Austin American Statesman (newspaper), in which it was alleged that the district had violated the Texas Open Meetings Act [1] in several respects. The trial court determined several issues as matters of law and submitted seven special issues to a jury, three of which were answered favorably to the newspaper and four of which were answered favorably to the district. The court denied the newspaper's prayer for an injunction on the district's assurance that it would not commit future violations of the Act as finally interpreted by the courts.

## STANDING

At the threshold we are faced with a challenge to the newspaper's standing to bring this suit. The district contends that the newspaper must show that it has some interest in the school district's activities other and apart from the interests of the general public.

■ The Open Meetings Act formerly provided that "any interested person" could bring suit to prevent violations. After a transitorially successful challenge to media representatives' standing to invoke the Act,[2] the legislature adopted an amendment which provided that "any interested person, *including bona fide members of the news media*," could bring an action either by mandamus or injunction to prevent violations. We think it is clear that the legislature thus intended to grant standing to the news media without requiring them to show a special interest apart from that of the general public. Within constitutional limitations the legislature is empowered to grant such standing. *See Scott v. Board of Adjustment,* 405 S.W.2d 55 (Tex.1966). Having standing to seek a writ of mandamus or injunction, the newspaper had a sufficient interest in the subject matter of the suit to also seek a declaratory judgment. *See Pea Picker, Inc. v.*

---

1. Tex.Rev.Civ.Stat.Ann. art. 6252–17 (Vernon Supp.1984).

2. *City of Abilene v. Shackleford,* 572 S.W.2d 742 (Tex.Civ.App.—Eastland 1978), *rev'd,* 585 S.W.2d 665 (Tex.1979).

*Reagan,* 632 S.W.2d 674 (Tex.App.—Tyler 1982, writ ref'd n.r.e.); *Anderson v. McRae,* 495 S.W.2d 351 (Tex.Civ.App.—Texarkana 1973, no writ).

## INTERPRETATION OF SECTION 2(*l*)

 A resolution of most of the issues in this controversy depends on the interpretation of Section 2(*l*) of the Open Meetings Act which states:

> Whenever any deliberations or any portion of a meeting are closed to the public as permitted by this Act,[3] no final action, decision, or vote with regard to any matter considered in the closed meeting shall be made except in a meeting which is open to the public and in compliance with the requirements of Section 3A of this Act.

The district contends that "final" modifies each of the verbs "action, decision or vote," and that votes or decisions in closed sessions are not prohibited so long as the final vote or decision is made or reported in an open meeting. The newspaper argues and the trial judge held that Section 2(*l*) proscribes any vote or decision or final action in an executive session. Disregarding the semantics, we conclude from a consideration of the Act's purpose and the evils it was designed to prevent, that Section 2(*l*) requires that the actual resolution of an ultimate issue confronting a public body be made in public. The Act was intended to keep decision making with reference to public business in the open so citizens can know how their representatives vote, and to allow citizen input in the decision making process prior to the taking of final action. To allow public officials to make their actual decisions in private sessions and then merely report their decision or present a formal, unanimous front to the public in an open meeting would thwart much of that purpose. *See Garcia v. City*

*of Kingsville,* 641 S.W.2d 339 (Tex.App.—Corpus Christi 1982, no writ); *Cameron County Good Gov't League v. Ramon,* 619 S.W.2d 224 (Tex.Civ.App.—Beaumont 1981, writ ref'd n.r.e.). We wish to make it clear, however, that the Act does not prohibit members in an executive session from expressing their opinions on an issue or announcing how they expect to vote on the issue in the open meeting, so long as the actual vote or decision is made in the open session. A contrary holding would debilitate the role of the deliberations which are permitted in the executive sessions and would unreasonably limit the rights of expression and advocacy.[4]

## SUBSTANTIAL COMPLIANCE

 Substantial compliance with the Act's provisions is sufficient, *Lower Colorado River Auth. v. City of San Marcus,* 523 S.W.2d 641 (Tex.1975); *Coates v. Windham,* 613 S.W.2d 572 (Tex.Civ.App.—Austin 1981, no writ), but it is not established by merely proving a history of part time compliance. Substantial compliance requires that in each instance or proceeding the statutory mandate is followed sufficiently to reasonably carry out the intent and purpose of the statute. *Santos v. Guerra,* 570 S.W.2d 437 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.); *Application of Santore,* 28 Wash.App. 319, 623 P.2d 702 (1981).

## THE ALLEGED VIOLATIONS

We now consider the propriety of the jury findings and the trial court's conclusions concerning the district's alleged violations.

### Electing Board Officers

 At an executive session to consider the selection of new officers, two members of the school board expressed a willingness

---

3. Tex.Rev.Civ.Stat.Ann. art. 6252–17, §§ 2(a), 2(g) (Vernon Supp.1984).

4. We recognize that enforcement of the provision as here interpreted may be difficult. A group could defeat the purpose of the Act by expressing their opinions in the private session and then confirming the majority position by unanimous vote in the open meeting. Difficulty of enforcement, however, is not a proper canon for interpretation of a statute as long as the meaning of the legislature can be ascertained. Moreover, such a practice can usually be detected and brought to light.

to serve as president. It was suggested that the members write their preferences on slips of paper so they could see how the board was leaning. One member tallied the votes, and without revealing the numerical split, announced that Mr. Davis received a majority.[5] The board then returned to the open session where a vote was taken which resulted in the unanimous election of Mr. Davis. The district contends the action in executive session was simply a straw vote and did not violate the Act, but there is sufficient evidence to support the trial court's conclusion that the actual resolution of the issue was made in executive session contrary to the provisions of Section 2(l).

## Releasing Names of Superintendent Candidates

■ The trial court held that the district violated Section 2(l) by deciding in executive session to make public the names and qualifications of candidates for the superintendent's position. The board had asked the attorney general whether it was required by law to make the information public in response to a demand by Common Cause. At an executive session the attorney general's opinion was discussed by the district's attorney, who advised that the law required that the information be released, and he would proceed to do so unless the members objected. There was no objection and the attorney released the information. The evidence does not reveal a violation in this instance. There was no vote, decision or final action within the meaning of Section 2(l), but simply an announcement that the law was to be followed.

## Deciding to Offer Surplus Property for Sale

■ Neither does the record support a conclusion that the district violated Section 2(l) by deciding to offer surplus property for sale. A reasonable construction of the evidence is that the board, in executive session, discussed the possibility of selling some of its surplus property, and instructed the administration to solicit bids to see if a sale would be feasible. Section 2(f) of the Act authorizes the board to discuss in executive session the value of real estate when an open discussion would be detrimental to its negotiating position. Since a decision to sell the property necessarily must be made upon a public consideration of the bids received, the purpose of the Act was preserved and the instruction to solicit bids on the property for later consideration was not a vote, decision or final action within the contemplation of Section 2(l).

## Discussing and Hiring Consultants in Executive Session

Based in part on the jury's answers to Special Issues 1 and 2 and in part on its own legal conclusions, the trial court found that the district violated Section 2(a) and Section 2(l) of the Act when it discussed and decided on selecting Dr. Lorrin Kennamer and a committee composed of nonboard members as consultants to assist the board in securing a new superintendent. The district argues that these findings are incorrect and not supported by evidence because it was permitted by Section 2(g)[6] to discuss in executive session the employment of those consultants because they constituted public employees, and no final action was taken except in open meetings.

■ Whether a decision was made in executive session on the consultants is immaterial because the consultants were independent contractors rather than public employees. Section 2(g) does not apply to independent contractors. Thus, even a discussion of their selection in a closed meet-

---

5. It was later revealed that the preference vote was four to three in favor of Mr. Davis.

6. Section 2(g) provides:
 Nothing in this Act shall be construed to require governmental bodies to hold meetings open to the public in cases involving the appointment, employment, evaluation, reassignment, duties, discipline, or dismissal of a public officer or employee or to hear complaints or charges against such officer or employee, unless such officer or employee requests a public hearing.

ing was prohibited. An independent contractor relationship exists when the employer is interested only in the results and the worker independently determines the method to be used to obtain the desired results. *Newspapers, Inc. v. Love*, 380 S.W.2d 582 (Tex.1964); *Hamman v. Boaz Well Serv. Inc.*, 620 S.W.2d 903 (Tex.Civ. App.—Fort Worth 1981, no writ); *Harrison v. Humphries*, 567 S.W.2d 884 (Tex. Civ.App.—Amarillo 1978, no writ). The test is whether the employer controls the details of the work.

Reverend Griffith, a member of the school board, testified that Dr. Kennamer was hired as a consultant. He stated that Kennamer and the other consultants would recruit candidates, make telephone inquiries, and conduct interviews to secure a pool of top-quality applicants which they would screen and give to the board as a suggested list of candidates. He testified that members of the committee would be free to use their own devices in finding people and would not be under any direct supervision by the board. The evidence thus supports the conclusion that the consultants were independent contractors and not public employees within the meaning of Section 2(g).

*Selection of Dr. Ellis as Superintendent*

■ Based on the jury's answer to Issue No. 4 the trial court declared that the district violated the Act by deciding in a closed meeting on the selection of Dr. John Ellis as superintendent. We have carefully reviewed the statement of facts and find there is no evidence to support that conclusion. The evidence is uncontroverted. Reverend Griffith contacted Dr. Ellis, who was one of several candidates interviewed for the position, and inquired if he would be willing to serve if selected by the board. Dr. Ellis replied that he would be willing to serve, whereupon Griffith reported that fact to the board. The board then went into executive session to discuss the possibility of employing Dr. Ellis, but no vote was taken. They then convened in open session, during which Mr. Will Davis moved to offer the position to Dr. Ellis. The motion was seconded and adopted by unanimous vote. Those facts do not reveal a violation in the selection of Dr. Ellis.

*Notices for the Executive Sessions*

■ The district urges error in the court's finding that it violated the Act by posting notices of meetings containing notices of proposed executive sessions only in general terms such as "personnel," "litigation," "real estate matters," and "consultation." We believe the court erred in that ruling. Section 3A(a) of the Act provides as follows:

> Written notice of the date, hour, place, and subject of each meeting held by a governmental body shall be given before the meeting as prescribed by this section, and any action taken by a governmental body at a meeting on a subject which was not stated on the agenda in the notice posted for such meeting is voidable. The requirement for notice prescribed by this section does not apply to matters about which specific factual information or a recitation of existing policy is furnished in response to an inquiry made at such meeting, whether such inquiry is made by a member of the general public or by a member of the governmental body. Any deliberation, discussion, or decision with respect to the subject about which inquiry was made shall be limited to a proposal to place such subject on the agenda for a subsequent meeting of such governmental body for which notice has been provided in compliance with this Act.

Section 2(a) provides:

> Except as otherwise provided in this Act or specifically permitted in the Constitution, every regular, special, or called meeting or session of every governmental body shall be open to the public; and no closed or executive meeting or session of any governmental body for any of the purposes for which closed or executive meetings or sessions are hereinafter authorized shall be held unless the governmental body has first been convened in open meeting or session for which notice has been given as hereinafter provided

and during which open meeting or session the presiding officer has publicly announced that a closed or executive meeting or session will be held and identified the section or sections under this Act authorizing the holding of such closed or executive session.

It has been held that the notice requirements of Section 3A(a) apply only to the open meetings and not to executive sessions. *Rogers v. State Board of Optometry,* 619 S.W.2d 603 (Tex.Civ.App.—Eastland 1981, no writ). Moreover, we find on the peculiar facts of this case that the topics listed in the notices given were sufficient to constitute substantial compliance with the notice requirements of Section 3A(a) if they apply. *See Coates v. Windham,* supra; *McConnell v. Alamo Heights Indep. School Dist.,* 576 S.W.2d 470 (Tex. Civ.App.—San Antonio 1978, writ ref'd n.r. e.); *Santos v. Guerra,* supra.

*Convening of Meeting Without a Quorum Present*

The district also complains of the finding that it violated the Act by convening its open meetings with less than a quorum present at the place of convening. The basis of that finding was evidence showing that on occasions when a meeting had been advertised the board members would gather and drink coffee in the superintendent's office while awaiting the arrival of a sufficient number of members to constitute a quorum. The superintendent's office is adjacent to the auditorium where open meetings are usually held and is separated from it by a short hallway. While the board members awaited a quorum the door to the superintendent's office was open and the public sometimes mingled there and drank coffee with the board members. When a quorum would arrive the president of the board, sometimes alone and sometimes accompanied by some of the board members, would walk to the auditorium, convene the meeting, and announce that the board was going into executive session in the superintendent's office. The notices specified the meeting place as "Administration Building, 6100 Guadalupe, Austin, Texas." The audi-

torium and the superintendent's office are both in the administration building at 6100 Guadalupe.

■ Since the superintendent's office and the auditorium are both in the administration building at 6100 Guadalupe and are adjacent, and the evidence shows that on the occasions in question both were obviously open to the public, we find there was substantial compliance with the requirements of Section 2(a) in the particular instances involved in this suit. We hold, however, that if the open meeting is convened in a place other than the place named in the notice, or in a separate place where a quorum is not present, a violation will occur.

### CONCLUSION

The declaratory judgment rendered below will be reformed to declare the rights of the parties consistent with the conclusions set forth in this opinion, and as reformed it will be affirmed.

It is so ordered.